**Dearing E. JONES, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 09–87–085–CR.

Court of Appeals of Texas, Beaumont.

Feb. 22, 1989.

Donald M. Brown, Conroe, Bruce W. Cobb, Beaumont, for appellant.

Dearing E. Jones, pro se.

Peter Speers, III, Thomas D. Glenn, Conroe, for appellee.

## OPINION

DIES, Chief Justice.

We have previously had a different aspect of this case before our court. *Jones v. State,* 680 S.W.2d 580 (Tex.App.—Beaumont 1984, no pet.). Appellant Jones was found guilty of felony theft by a jury on May 10, 1982. The judge assessed punishment at ten years' confinement in the Tex-

as Department of Corrections but Appellant was placed on probation. A condition of probation was that Appellant pay an unspecified amount of restitution to be determined at a later time. On July 29, 1983, the judge set the total sum of restitution at $88,831.00 and ordered Appellant to commence payments of $200.00 per month. Another hearing was held for review of the restitution order on August 16, 1985, and Appellant was ordered to commence paying $700.00 per month. Appellant's probation was revoked on March 6, 1987, which brings us the present appeal.

In his first four points of error, Appellant challenges the sufficiency of the evidence supporting the jury's verdict of guilt. A probation revocation proceeding cannot be used to collaterally attack the underlying conviction. *Traylor v. State,* 561 S.W.2d 492 (Tex.Crim.App.1978); *Ramirez v. State,* 486 S.W.2d 373 (Tex.Crim. App.1972). These points are all overruled.

Point of error number five states: "The trial court erred in revoking Appellant's probation as no valid judgment adjudicating the Appellant's guilt was entered until February 10, 1987, almost two months after the State's second amended motion to revoke probation was filed...."

*TEX.CODE CRIM.PROC.ANN. ART. 42.01* (Vernon Supp.1989) sets out the requirements of a judgment. One of them (sec. 1, subd. 8) provides: "In the event of a conviction that the defendant is adjudged guilty of the offense as found by the verdict of the jury...." To be effective, the judgment must state that defendant is adjudged to be guilty. *Richie v. State,* 542 S.W.2d 422 (Tex.Crim.App.1976). A sentence must be based on a valid judgment. *Thornton v. State,* 576 S.W.2d 407 (Tex. Crim.App.1979). *See also, Bell v. State,* 656 S.W.2d 502 (Tex.App.—Tyler 1983, dism'd), holding the trial court erred in revoking probation where a judgment nunc pro tunc was the instrument which first validly placed defendant on probation and the alleged probation violations occurred before that judgment was entered. Here the judgment nunc pro tunc, which correct-

ed the original judgment (which failed to set out sec. 1, subd. 8 of Art. 42.01 set out above) was entered on February 10, 1987. The State's second amended motion to revoke probation was filed on December 22, 1986.

The purpose of a nunc pro tunc order is to correctly reflect *from the records of the court* a judgment actually made by it but which for some reason was not entered of record at the proper time. *Ex parte Dopps*, 723 S.W.2d 669, 670 (Tex. Crim.App.1986). A nunc pro tunc order may be used to correct clerical errors in a judgment, but may not be used to correct judicial omissions. *Id.* Therefore, before a judgment nunc pro tunc may be entered, there must be proof that the proposed judgment was actually rendered or pronounced at an earlier time. *Id.*

In the present case, there is no evidence in the record, including the hearing on the motion for judgment nunc pro tunc, that the trial court ever adjudged Appellant guilty of theft prior to February 10, 1987, when such hearing was conducted. At the hearing on the motion for judgment nunc pro tunc, the trial court simply announced he would enter an adjudication of Appellant's guilt nunc pro tunc effective as of August 9, 1982. The trial court can make corrections by way of a nunc pro tunc order to reflect what actually occurred at trial, but such corrections can only be made as to what was done and not as to what should have been done. *Villarreal v. State*, 590 S.W.2d 938, 939 (Tex.Crim.App. 1979). Since there is no evidence that Appellant was adjudged guilty prior to February 10, 1987, the judgment entered on that date is not effective as a judgment nunc pro tunc. However, the trial court did have authority to render and enter an original adjudication of Appellant's guilt on such date. *TEX.R.APP.PROC. 36(a).*

The probation violations for which Appellant's probation was revoked occurred before he was placed on probation by a valid judgment and sentence. Appellant's probation cannot be revoked upon the basis of violations occurring before Appellant was placed on probation. *Little-*

*field v. State*, 586 S.W.2d 534, 535 (Tex. Crim.App.1979). Therefore, the trial court erred in revoking Appellant's probation. Appellant's fifth point of error is sustained and the judgment of the trial court is reversed and the judgment is remanded to the trial court.

We also order that the "judgment" signed by the trial court on August 9, 1982, is void and that the judgment signed on February 10, 1987, be reformed to reflect that it was rendered on that date and not on August 9, 1982.

Reversed and Remanded.

BROOKSHIRE, Justice, dissenting.

Respectfully this dissent is filed. A narrative of some of the more crucial background facts and proceedings would be helpful and enlightening. The reported case of *Jones v. State*, 680 S.W.2d 580 (Tex.App.—Beaumont 1984, no pet.) is, I think, a good beginning point. That previous opinion of this Court involving Dearing E. Jones as Appellant held as a ground of the dismissal that the Appellant, Dearing E. Jones, stated in his brief that no appeal was taken from his conviction for theft and none is now taken as to the conviction. This conviction of the Appellant occurred after the trial on the merits of Jones in May of 1982. Hence, from the prior opinion of this Court it is clearly proved that Mr. Jones had been convicted and was found guilty of theft.

The judgment that was filed August 9, 1982 contained a recitation, stating in substance, that the jury retired in charge of the proper officer to consider their verdict as to the guilt or innocence of the defendant, Dearing E. Jones, and on May 10, 1982 the jury brought into open court its verdict with the defendant, Jones, and defendant's counsel both being present. In due form of law the jury returned the following verdict which was received by the court and was entered into the minutes of the court. The verdict was read: "WE, THE JURY, find the defendant, DEARING ESTES JONES, GUILTY of the offense of Theft as charged in the indictment." Mr.

Jones received a copy of the resulting judgment which included his right thumbprint.

In fact, there is in the record a letter from the Appellant himself stating clearly that he understood that he had been convicted of the offense charged. I think that even if the judgment filed August 9, 1982, did not in so many exact words recite that the defendant was adjudged guilty of the offense as found by the verdict, it certainly did comply in substance with *TEX.CODE CRIM.PROC.ANN. art. 42.01, sec. 1, subd. 8* (Vernon Supp.1989). Another reason for my opinion is that the same judgment ordered Appellant Jones to be confined in the State Department of Corrections for a period of ten years but that part of the sentence was suspended so that the *ends of justice could be subserved.* Then the sentence was suspended and Mr. Jones was placed on probation for ten years upon certain terms and conditions which were set out clearly and in detail. All of these provisions in the judgment demonstrate that any omitted words were merely a clerical error. Furthermore, Jones abided by the judgment for years and recognized it as valid, enforceable and subsisting. The judgment has long since become final and unappealable. Jones cannot now attack it collaterally; it is not void.

Nextly, as I read and interpret the Rules of Appellate Procedure, Rule 36, on nunc pro tunc proceedings, judgment and sentence, said Rule 36 provides that unless a new trial has been granted or unless the judgment was actually arrested or an appeal had been taken from that judgment, *then the failure of the trial court to enter the judgment and pronounce the sentence may be corrected at any time by entering the judgment and pronouncing the sentence.* Rule 36 clearly provides that these acts may be done *at any time.* Rule 36(b) provides for a proper credit to be given on the sentence that was *finally pronounced* for all the time that the defendant has spent in confinement. The nunc pro tunc judgment filed November 21, 1984, was certainly well within the purview of *TEX.R.APP.P. 36.* I must respectfully take exception with the Court's construction of Article 42.01 and Rule 36 wherein

the majority opinion took the position that there was no valid judgment which in turn would sustain the amended motion to revoke probation filed herein. I am of the opinion that this nunc pro tunc order or judgment was merely to correct a clerical error in the judgment. The nunc pro tunc judgment was properly entered from the records of the court and pursuant to and in compliance with *TEX.R.APP.P. 36* to reflect the judgment and sentence actually made by the court. The total wording of the first judgment and the actions of Dearing Jones pursuant thereto proves the unimportant omission was purely and simply clerical. Of course, the original judgment of August 9, 1982, was entered of record at the proper time.

As I read the relevant record, the attorney of record for the Appellant stated to the court *that he (Mr. Brown) had no problem about entering a judgment, that it was just the matter of the "nunc pro tuncness".* The able attorney asked the court if the entering of the judgment was as of a prior date to which the court responded "yes", and that the prior date was August 9, 1982. Then the court announced that he was going to sign his signature and enter the judgment nunc pro tunc as of the prior date. Mr. Brown then responded *that he had no problem with entering the judgment* but he did take an exception. Indeed, Mr. Jones entered a waiver of his right to appeal from his prior conviction of the offense of theft. The revocation of his probation was a correct action taken by the trial court and the entry of the nunc pro tunc judgment was correct and supported the revocation.

A few of the background facts may be helpful. Dearing Jones was convicted for felony theft of a large sum of money from two elderly ladies, a Ms. Byrnes and a Mrs. Cable. It was shown that the amount involved exceeded some $80,000. The Appellant was placed on probation and ordered to pay restitution. At the time of the offense the Appellant was an associate pastor of a large church in Conroe. Ms. Byrnes and Mrs. Cable were members and parishioners of his church. From about

the date of the original restitution hearing which took place on July 2, 1982, until the revocation date, the Appellant had been a pastor of another church, not of the same denomination. The Appellant took the position at the 1982 hearing that his salary was $200 per month. At a prior hearing another attorney of record for the Appellant stated to the judge that he did not have any disagreement about the total amount involved in all the transactions. He did state that there was no evidence that Mr. Dearing Jones benefitted from a $54,200 check or transaction. The State's position at that time was that the amount of money owed was a figure set at $88,831 which was based on four different checks. Since the Appellant was convicted on the charge of the court as it was written, he would be legally responsible for $88,831. At that point Mr. Tyson, Jones' attorney, stated that Dearing Jones was convicted as a party. It is fair to state that the Appellant's attorney did not even contest the amount of money reflecting the difference between the $88,831 and $54,200, being $34,631. It was shown at the hearing of July of '83 that Jones had an income from a second church of $1,000 per month plus a $500 amount for housing.

The Appellant stated while he was on the stand, that there was an indebtedness of $684 that came out of his income. This indebtedness was owed to a Mr. Ledbetter and apparently the amount owed Ledbetter was built up gradually. There is testimony from the Appellant that he thought $1,500 was the first loan, then the amount went up to $4,500, and finally to $12,000. Appellant was just keeping a running account with Ledbetter. Apparently Mrs. Ledbetter was the church secretary of the second church were the Appellant served as a minister. At the end of that hearing the trial court ordered the Appellant to make restitution to his former parishioners of $200 per month and Appellant made these payments for twenty-four months. The court also announced at that hearing that in the light of the fact that Mr. Jones was convicted of theft of $88,831 that would be the proper amount of restitution.

At a hearing August 16, 1985, Mr. Dearing Jones, the Appellant, testified that he had paid off the entire debt due and owing to Mr. Clyde Ledbetter, which at one time had reached the figure of $12,000, and that the same had been paid off completely at the rate of $684 per month. Since the debt to Ledbetter had been completely retired, the trial court increased the monthly restitution amount to $700. A different indebtedness of $5,000 owed to another creditor, a prominent jurist, had also been completely paid off at the rate of $100 a month. Evidently, since Jones was able to pay off $17,000 in monthly payments of $784, the trial judge reasoned Jones could make $700 monthly payments. Jones had been paying to the creditors he preferred. Now the court ordered him to pay Byrnes and Cable.

The Appellant failed to make these increased restitution payments. He did proceed in a United States Bankruptcy Court to attempt to obtain an injunction prohibiting the State Court from requiring or attempting to require restitution payments. A major thrust of the Appellant's position is that it was improper for the trial court to revoke his probation based on allegations alleged to have occurred prior to the actual date of the signing of the judgment nunc pro tunc. Appellant places important reliance on *Bell v. State*, 656 S.W.2d 502 (Tex.App.—Tyler 1983, pet. dism'd). In my opinion the Appellant's placing reliance upon *Bell, supra*, is simply not sound. In *Bell*, the Court of Appeals noted *that no judgment or purported judgment was entered at the time the trial court entered its order which granted probation.* The court further found that the judgment that was entered two years later was the actual original judgment and was not a judgment nunc pro tunc. The Court of Appeals in *Bell, supra*, concluded that Mr. Bell's probation was improperly revoked since the violations were all alleged to have been committed prior to the belatedly entered original judgment. Our case and the original judgment and the judgment nunc pro tunc involved here are different from *Bell*. *Bell* is not controlling. As shown above, a formal judgment, being an original judgment, was actually signed and entered on

August 9, 1982. The State filed a motion for judgment nunc pro tunc on November 21, 1984. The Appellant had notice of this motion and was aware of the facts contained in the motion for judgment nunc pro tunc. In the Appellant's answer to the motion to revoke probation, he complained about the fact that the judgment of August 1982, did not specifically adjudicate him guilty.

Furthermore, the Appellant contends he was denied the due process of law. But he had notice and he was represented by personally chosen counsel; he was given a full hearing; a record was made; he knew the charges and violations of probation pleaded against him. Under this record, the revocation of the Appellant's probation did not deprive him of due process of law. Appellate Rule 81(b) was not *violated.*

Since Appellant's counsel conceded that at the very least $34,631 should be restored or repaid; since another attorney for Jones had no objection to the entry of a judgment but only its "nunc pro tuncness"; since Dearing Jones had testified as to his ability to pay off $17,000 of indebtedness in monthly payments of $784; since Jones had been paying the debts that he preferred to pay; since the Bankruptcy Court entered an order discharging only Jones' dischargeable obligations; since Jones' due process of law rights and privileges had been observed; since the able and experienced trial judge had the right and power to order Jones to pay Byrnes and Cable; since the trial court did not abuse its discretion; since the trial court had ample evidence to support and sustain its acts and orders; since Jones unquestionably and undoubtedly failed to make the restitution payments to Byrnes and Cable—I think the trial court's judgment and order should be in all things affirmed.

It seems passing strange to me that as of the date of this opinion in this appeal the miscreant and wrongdoer prevails and the innocents who have been deprived of more than $88,000 obtain no relief, even though the judgment of conviction of Jones was filed in the late summer of 1982.

Therefore, I respectfully, but adamantly, dissent.