**Dearing E. JONES, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 305–89.**

Court of Criminal Appeals of Texas, En Banc.

June 20, 1990.

Bruce C. Cobb, court appointed, Beaumont, and Donald M. Brown, Conroe, for appellant.

Peter C. Speers, III, Dist. Atty., Thomas D. Glenn, Asst. Dist. Atty., Conroe, and Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON STATE'S PETITION FOR DISCRETIONARY REVIEW

TEAGUE, Judge.

Dearing E. Jones, henceforth appellant, was convicted of felony theft by the verdict of a jury returned on *May 10, 1982*. His punishment was assessed by the trial judge at confinement in the penitentiary for a period of ten years, but imposition of sentence was suspended and he was placed on adult probation. A written judgment reflecting these events was entered on *August 9, 1982*. Some four and a half years later, on *February 10, 1987*, the trial court entered a judgment *nunc pro tunc*[1] to show that, on *August 9, 1982*, appellant

had been adjudged "guilty of the offense of Theft as alleged in the indictment," a recitation not previously set out in the *August 9, 1982* written judgment of the court.[2] Shortly thereafter, on *March 6, 1987*, appellant's probation was revoked by the trial court for violations of conditions of probation that occurred between August 1985 and January 1987, which was before the entry of the *nunc pro tunc* judgment on *February 10, 1987*.

On direct appeal, appellant asserted, *inter alia*, that it was improper for the trial court to revoke his probation based on violations alleged to have occurred prior to *February 10, 1987*, the actual date of the signing of the judgment *nunc pro tunc*. The Ninth Court of Appeals in Beaumont, speaking through former Chief Justice Dies, reversed the trial court's revocation order, holding that no valid judgment of conviction had been rendered in this cause until *February 10, 1987*, which was after appellant allegedly violated the conditions of his probation. It entered the following order: "We also order that the "judgment" signed by the trial court on August 9, 1982, is void and that the judgment signed on February 10, 1987, be reformed to reflect that it was rendered on that date and not on August 9, 1982." Over vigorous dissent by Justice Brookshire, a majority of the court concluded that appellant had not been adjudged guilty until entry of the *nunc pro tunc* judgment, which occurred on *February 10, 1987*, and that his probation

---

1. The legal term *"nunc pro tunc"* is usually defined as follows: "Lat. Now for then. A phrase applied to acts allowed to be done after the time when they should be done, with a retroactive effect, *i.e.*, with the same effect as if regularly done. [citations omitted]" BLACK'S LAW DICTIONARY 1218 (Rev. 4th ed. 1968).

    We agree with the court of appeals that "[t]he purpose of a nunc pro tunc order is to correctly reflect *from the records of the court* a judgment actually made by it but which for some reason was not entered of record at the proper time." *Jones v. State,* 766 S.W.2d 844, 846 (Tex.App.—Beaumont 1989).

2. Art. 42.01, § 1, V.A.C.C.P. provides in part that:

    A judgment is the written declaration of the court signed by the trial judge and entered of record showing the conviction or acquittal of

the defendant. The sentence served shall be based on the information contained in the judgment. The judgment should reflect:

. . . . .

8. In the event of a conviction that the defendant is adjudged guilty of the offense as found by the verdict of the jury or the finding of the court, and that the defendant be punished in accordance with the jury's verdict or the court's finding as to the proper punishment[.] Before Acts 1981, 67th Leg., p. 809, ch. 291, § 111, eff. Sept 1, 1981, the statute read:

A "judgment" is the declaration of the court entered of record, showing:

. . . . .

9. In the case of a conviction, that it is considered by the court that the defendant is adjudged to be guilty of the offense as found by the jury ...

might not, therefore, be revoked for violations predating that judgment. *Jones v. State*, 766 S.W.2d 844 (Tex.App.—Beaumont 1989). Because of substantial disagreement on the court of appeals, we granted the State's petition for discretionary review. *See* Tex.R.App.Proc. 200(c)(5).

■ Tex.R.App.Proc. 36(a) provides that, "[u]nless a new trial has been granted, the judgment arrested, or an appeal has been taken, failure of the court to enter judgment and pronounce sentence may be corrected at any time by entering judgment and pronouncing sentence." It is apparent from the sense of this language that the rule was meant to be coextensive with former statutes on the same subject.[3] For this reason, we regard our body of case law construing these statutes to have continued vitality under the current Rules of Appellate Procedure. We find that to better understand our case law on the subject, one must first appreciate certain semantic conventions, such as the relationship between "rendition" and "entry" of judgment. Briefly stated, the former is an event which the latter records. Thus, a judgment may be "entered" *nunc pro tunc* if it was in fact "rendered," but not recorded, at an earlier time.[4] *See Ex Parte Poe*, 751 S.W.2d 873, 876 (Tex.Crim.App.1988); *State ex rel. Bryan v. McDonald*, 642 S.W.2d 492, 494 (Tex.Crim.App.1982). A judgment may not be "rendered" *nunc pro tunc* under any circumstances. *See Ex parte Dopps*, 723 S.W.2d 669, 670 (Tex. Crim.App.1986); *Wilson v. State*, 677 S.W.2d 518, 521 (Tex.Crim.App.1984).

■ The difficulty in the present context is knowing whether a defendant has indeed been "adjudged guilty of the offense as found by the verdict of the jury or the finding of the court" when a notation to such effect has been omitted from the

"written declaration of the court[.]" In short, in this instance, we must decide whether the written declaration of *August 9, 1982* is that which adjudged the defendant guilty (i.e. the rendition of the judgment) or is simply a record of the event (i.e. the entry of the judgment). Only if it is the latter may it be corrected *nunc pro tunc.*

An examination of the statement of facts in this cause reveals that punishment was assessed by the trial judge after a verdict of guilty by the jury. The only monologue which at all resembles the pronouncement of a sentence appears at the end of the punishment phase of appellant's trial:

It is the decision of this Court, I have heard all the testimony in the trial of the case, that the ends of justice best be served that Dearing Jones be confined in the Texas Department of Corrections for a period of ten years. The Court further orders that this sentence be suspended, the defendant placed on probation for a period of ten years.

■ What this pronouncement lacks, and what the written judgment of the Court, dated *August 9, 1982*, also lacks, is a simple recitation that "the defendant is adjudged guilty[.]" However, we are of the opinion that a defendant has been adjudged guilty *when the verdict convicting him has been received and accepted by the trial judge. See* Arts. 37.04, 37.05, V.A.C.C.P. No further ritual or special incantation from the bench is necessary to accomplish an adjudication of guilt beyond the pronouncement of sentence as required by law. *See Villela v. State*, 564 S.W.2d 750, 751 (Tex.Crim.App.1978), *reh'g en banc denied; Ex parte Gibson*, 137 Tex.Crim.R. 72, 128 S.W.2d 396, 397 (1939). Such pronouncement by the trial judge is sufficient in this cause if it "orders that the punish-

---

3. Prior to September 1, 1986 (*See* Acts 1985, 69th Leg., ch. 685, § 4 and Order of Texas Court of Criminal Appeals adopting Tex.R.App.Proc.), Art. 42.06, V.A.C.C.P., provided in part that, "[i]f there is a failure from any cause whatever to enter judgment and pronounce sentence, the judgment may be entered and sentence pronounced at any subsequent time, unless a new trial has been granted, or the judgment arrested, or an appeal has been taken." *See also* Art. 772, V.A.C.C.P. (1925).

4. We often refer to such omissions as "clerical" rather than "judicial." *E.g., Alvarez v. State*, 605 S.W.2d 615, 617 (Tex.Crim.App.1980). The failure to record or to accurately record a judgment which was rendered in fact is plainly a clerical error.

ment be carried into execution in the manner prescribed by law." We are satisfied that the trial judge's pronouncement in the instant cause was fully adequate for this purpose. No further judicial act was required to adjudge appellant guilty.[5]

Consequently, although a complete written judgment is essential to the finality of a conviction in the trial court since appeal may not be taken until one is entered, *Eastwood v. State*, 538 S.W.2d 107 (Tex.Crim.App.1976),[6] such information as is required to be set out in the judgment is merely a record of events which have occurred in fact. The written judgment is not itself the conviction but evidence, among other things, that a conviction has occurred. When the proof shows that a conviction has occurred in fact, but that the written declaration of the court fails to reflect it, a judgment *nunc pro tunc* may be entered to supply the omitted information. This procedure merely causes the record accurately to reflect that a conviction did in fact occur at an earlier time.[7]

It follows in this instance that the omission of the trial court's written declaration to recite in the *August 9, 1982* judgment that "the defendant is adjudged guilty" constitutes merely a failure, under the circumstances of this cause, to record that which occurred in fact, and may, therefore, be corrected by a judgment *nunc pro tunc*, without necessity of any further judicial action. *See Savant v. State*, 535 S.W.2d 190, 192 (Tex.Crim.App.1976); *Richie v. State*, 542 S.W.2d 422, 424 (Tex.Crim.App. 1976) (holding in *obiter dictum* that a written judgment which is defective because "it nowhere states that appellant was adjudged to be guilty" may be corrected *nunc pro tunc* "[i]f a correct judgment was in fact rendered[.]") The majority of the court of appeals clearly erred in holding to the contrary.

Moreover, because appellant's conviction was neither incomplete nor invalid on account of this omission, it follows that his probation and the conditions thereof were binding upon him from the date sentence was pronounced and the original judgment entered on *August 9, 1982*. Any violation by appellant of his probationary conditions from that date forward until appellant's successful completion of his probationary term may thus form the basis for a motion to revoke his probation.

The judgment of the Court of Appeals is therefore reversed and the cause remanded to that court for consideration of appellant's remaining points of error.

---

5. Until a few years ago, the law defined a sentence as "the order of the court ... pronouncing the judgment, and ordering the same to be carried into execution in the manner prescribed by law." Art. 42.02, V.A.C.C.P, as enacted by Acts 1965, 59th Leg., p. 317, ch. 722, § 1, eff. Jan. 1, 1966. This statute was construed by the Court in such a way that the existence of a judgment was prerequisite to the pronouncement of sentence. *E.g., Thornton v. State*, 576 S.W.2d 407, 408 (Tex.Crim.App.1979). But statutory amendment has since redefined a sentence to be "that part of the judgment ... that orders that the punishment be carried into execution in the manner prescribed by law." Art. 42.02, V.A.C. C.P., as amended by Acts 1981, 67th Leg., p. 809, ch. 291, § 112, eff. Sept. 1, 1981. Ironically, although the judgment of which the sentence is now nominally a part has always been only a written instrument, the law still provides that "sentence shall be pronounced in the defendant's presence." Art. 42.03, § 1, V.A.C.C.P.

6. Although a written judgment in the form prescribed by statute is held indispensable to the jurisdiction of the appellate court, we have also held that an appeal from a judgment *nunc pro tunc* "is limited to the validity of the nunc pro tunc entry," at least under circumstances where no appeal was attempted from the original judgment. *Moore v. State*, 446 S.W.2d 878, 879 (Tex.Crim.App.1969); *Cunningham v. State*, 167 Tex.Crim. 641, 322 S.W.2d 538, 540 (1959). But cf. *Martin v. State*, 154 Tex.Crim.R. 306, 236 S.W.2d 819 (1951). The continued viability of this rule is not, however, at issue in the present context.

7. The procedure for entering *nunc pro tunc* judgments has been construed to require a hearing at which evidence must be adduced in the presence of the defendant proving that the events in question actually occurred. *Shaw v. State*, 539 S.W.2d 887, 890 (Tex.Crim.App.1976); *Ex parte Brown*, 477 S.W.2d 552, 554 (Tex.Crim. App.1972). *See also Hurley v. State*, 606 S.W.2d 887, 888 n. 1 (Tex.Crim.App.1980). *Cf. Homan v. Hughes*, 708 S.W.2d 449 (Tex.Crim.App.1986) (failure to hold a hearing is subject to a kind of harm analysis). Appellant does not complain that such a hearing wasn't held in the instant cause.

BERCHELMANN, J., concurs in the result.

McCORMICK, P.J., and CLINTON, J., dissent.