

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. PD-0125-14

### VERA ELIZABETH GUTHRIE-NAIL, Appellant

### v.

### THE STATE OF TEXAS

### ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE FIFTH COURT OF APPEALS
### COLLIN COUNTY

RICHARDSON, J., filed a concurring opinion in which JOHNSON, J., and NEWELL, J., joined.

### CONCURRING OPINION

I join the majority opinion. I, too, am not convinced that the judgment *nunc pro tunc* in this case was properly issued, and I agree that this matter should be remanded to the trial court for a hearing on this issue.

A court may not properly grant a judgment *nunc pro tunc* to change the judgment "to reflect what it believes should have been done."[1] Rather, a *nunc pro tunc* correction "must

---

[1] *Collins v. State,* 240 S.W.3d 925, 928 (Tex. Crim. App. 2007).

reflect the judgment that was actually rendered."[2] The record does not clearly show whether the trial court was correcting the judgment to reflect what *was* done, or whether the trial court was correcting the judgment to reflect what *should* have been done.

Nothing was said on the record at the time of the plea indicating that the trial judge made an affirmative finding of a deadly weapon, or that he had intended to enter one on the judgment. In fact, the original judgment contains an "N/A" in the section entitled "Findings on Deadly Weapon." Such a notation would seem to indicate that a deadly weapon finding was "not applicable," and suggests that the trial judge did not expressly make, nor intend to make, an affirmative finding of a deadly weapon.

On the other hand, the trial docket sheet contains a "Deadly Weapon Finding 42.12" notation. This is not a notation in the trial judge's handwriting on the court's case file docket sheet, but is instead a computer printout generated by the district court clerk. While it is some support for concluding that a deadly weapon finding was made at the time of the plea, it is not dispositive, since the record is devoid of any mention by the judge of his intent to enter a deadly weapon finding.

Because there is a lack of clarity as to whether the trial judge intended to enter an affirmative finding of a deadly weapon on the original judgment, I agree that a hearing is necessary to afford Guthrie-Nail the opportunity to be heard on this issue.[3] Thus, remanding

---

[2] *Blanton v. State,* 369 S.W.3d 894, 899 (Tex. Crim. App. 2012) (citing *Jones v. State*, 795 S.W.2d 199, 200 (Tex. Crim. App. 1990)).

[3] *Shaw v. State,* 539 S.W.2d 887, 890 (Tex. Crim. App. 1976). Moreover, although the issue of the voluntariness of Guthrie-Nail's plea would not be the subject of such a hearing, nor affect the

the matter to the trial court for such purpose would not be a "useless task."[4]

A hearing would also afford the trial judge an opportunity to provide an explanation, if there is one, as to why there was no mention of a deadly weapon finding on the record at the time of Guthrie-Nail's plea. The presence of an affirmative finding of a deadly weapon on a judgment convicting a defendant of a non-3g offense[5] has a significant impact on a defendant's parole eligibility.[6] Even though the impact of a deadly weapon finding on parole eligibility does not fall under the statutory admonishment regarding "range of punishment,"[7] in this particular case, a deadly weapon finding would mean Guthrie-Nail would have to serve a minimum of twenty-five years of her sentence before becoming eligible for parole. This trial judge was conscientious and thorough in admonishing Guthrie-Nail,[8] which is why

_____

validity of the judgment *nunc pro tunc*, if Guthrie-Nail believes that she was misadvised by her attorneys or misled regarding the terms of her plea bargain, she could seek relief by filing an application for writ of habeas corpus pursuant to Texas Code of Criminal Procedure Article 11.07.

[4] *Blanton v. State,* 369 S.W.3d at 900.

[5] TEX. CODE CRIM. PROC. art. 42.12,§ 3g(a)(1). In this case, the offense to which the appellant pled, conspiracy to commit capital murder, is not listed in Article 42.12, section 3g(a)(1).

[6] *See* TEX. CODE CRIM. PROC. art. 37.07, § 4(a). If the defendant is convicted of an offense listed in Section 3g(a)(1), or where there is an affirmative finding under Section 3g(a)(2) (a deadly weapon finding), the defendant will not become eligible for parole until the actual time served equals one-half of the sentence imposed or 30 years, whichever is less. If the defendant is not convicted of an offense under section 3g(a)(1), and there is no affirmative finding under section 3g(a)(2), the defendant is eligible for parole after one-fourth of the sentence imposed, or 15 years, whichever is less.

[7] *See Ex parte Huskins,* 176 S.W.3d 818, 821 (Tex. Crim. App. 2005) (holding that a deadly weapon finding is not part of the defendant's sentence).

[8] For example, the trial judge admonished Guthrie-Nail regarding the following: about the waiver of her right to appeal; about the range of punishment applicable to both counts of the

the absence of any mention of a deadly weapon finding is puzzling. Nevertheless, advising a defendant whether a deadly weapon finding will be entered, or its impact on parole eligibility if one is entered, is not a statutorily required admonishment.[9] Thus, the trial judge's failure to admonish Guthrie-Nail regarding an affirmative finding of a deadly weapon would not necessarily be indicative of his intent. However, if the subject of a deadly weapon finding was simply not discussed amongst the parties, nor considered by the trial judge, at the time of the plea, then the judgment *nunc pro tunc* should not have been issued to correct a missed opportunity—in other words, "to reflect what [the trial court] believes should have been done."[10]

　　With these additional comments, I concur.

FILED: September 16, 2015
PUBLISH

---

indictment; that eligibility for parole does not guarantee that parole will be granted; about the consequences of the plea if she were not a U.S. citizen; about the waiver of a jury trial; about whether she was taking any medication that would have clouded her ability to make a free and voluntary decision or interfere with her thought processes; and about whether she was pleading guilty hoping for a pardon or parole. Guthrie-Nail was then admonished on the record by one of her three attorneys. Her attorneys and the prosecutors were then given an opportunity to address the court. There were several opportunities for the trial judge and the attorneys to note on the record whether there would be a deadly weapon finding, particularly when the judge admonished Guthrie-Nail regarding the length of her sentence and the eligibility for parole. The terms "affirmative finding" or "deadly weapon" were not mentioned at any time during the plea.

[9] TEX. CODE CRIM. PROC. art. 26.13 (containing the list of admonishments the trial court must give prior to accepting a plea of guilty or a plea of *nolo contendere*). Although not statutorily required, the better practice for a trial court judge would be to include an oral admonishment regarding whether a deadly weapon finding is going to be entered on the judgment.

[10] *Collins,* 240 S.W.3d at 928.