

# NUMBER 13-17-00304-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

**BUDDY HERNANDEZ,**                                                   **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                              **Appellee.**

---

### On appeal from the 117th District Court
### of Nueces County, Texas.

---

# MEMORANDUM OPINION

### Before Chief Justice Contreras and Justices Longoria and Perkes
### Memorandum Opinion by Justice Longoria

Appellant Buddy Hernandez was indicted on two counts of aggravated sexual assault of a child, a first-degree felony. *See* TEX. PENAL CODE ANN. § 22.021 (West, Westlaw through 2017 1st C.S.). He pleaded guilty pursuant to a plea agreement, and the trial court placed him on deferred-adjudication community supervision for a period of six years. Thereafter, the trial court revoked Hernandez's community supervision and

sentenced him to sixty years' imprisonment. By four issues, Hernandez argues: (1) the evidence is insufficient to show he violated a condition of his community supervision; (2) the judgment of conviction is void because the trial court did not declare Hernandez guilty; (3) "a defendant must be provided an opportunity to be heard on the issue of punishment";[1] and (4) his sentence is excessive and disproportionate. We affirm.

## I.    BACKGROUND

Hernandez was indicted on September 13, 2012 for one count of continuous sexual abuse of a child. *See id*. § 21.02 (West, Westlaw through 2017 1st C.S.). The child complainant was six-year-old D.G.,[2] the son of Hernandez's then common-law wife. Four months later, he was reindicted for two counts of aggravated sexual assault of a child. *See id.* § 21.021. On February 12, 2013, Hernandez pleaded guilty to two counts of aggravated sexual assault of a child, and the trial court placed him on deferred adjudication community supervision for six years pursuant to a plea agreement.

As a condition of his community supervision, Hernandez was prohibited from having any contact with children under the age of seventeen, including his own. Hernandez had a daughter, K.M., in 2004. K.M. lived with her mother during Hernandez's community supervision along with K.M.'s half-sister, H.H. Due to the court's restrictions, Hernandez moved in with his mother Rose, and his other daughter M.H. went to live with Hernandez's grandmother, Lydia. Hernandez filed motions for relief from the conditions of his community supervision so that he could have contact with his children, specifically

---

[1] Hernandez does not specifically argue the trial court failed to provide him this opportunity.

[2] We refer to minors by their initials to protect their identity. *See* TEX. R. APP. P. 9.8(b).

2

M.H., but the trial court denied his motions.[3]

The State filed a motion to revoke Hernandez's community supervision on February 20, 2017, alleging Hernandez committed the offense of continuous sexual abuse of a child on or about June 13, 2013 through May 17, 2015, while Hernandez was on community supervision. The trial court heard the State's motion on April 13 and 14, 2017.

At the motion to revoke hearing, H.H. testified that she was around nine years old when Hernandez started sexually molesting her. At his apartment, Hernandez waited until K.M. and D.M., Hernandez's common-law wife's son, fell asleep. According to H.H., Hernandez took H.H. to his bedroom and shut the door. He placed H.H. on his lap and asked her to kiss him. She kissed him on his neck, and he insisted that she keep kissing him. When she did not, he asked her to kiss him on his mouth. H.H. refused, and Hernandez kissed her on the mouth. She testified about a similar incident occurring at Lydia's home when H.H. was ten or eleven years old. While H.H. was on her way to the restroom, Hernandez grabbed her butt cheeks, kissed her on her neck and mouth, and whispered to H.H. not to tell anyone. Once Hernandez heard the front door open, he stopped.

H.H. testified about Hernandez's most recent sexual interaction with her, which happened in the summer of 2014, one or two months before she left for Tennessee. It was like all the other times: Hernandez touched her breasts, vagina, and her butt,

[3] On May 5, 2015, Hernandez was convicted of three counts of aggravated sexual assault of a child in trial court cause no. 14-CR-3997-B. The victim in that case was R.H. On May 8, 2015, he was convicted of two counts of aggravated sexual assault of a child in trial court cause no. 15-CR-0181-B. The victim in that case was J.H. Hernandez also pleaded guilty to one count of indecency with a child, and the victim in that case was M.H.H. Although it is unclear from the record, it appears that these children were related to Hernandez, and Hernandez was placed on community supervision for these offenses. These cases are unrelated to this appeal.

motioning his hands around her body while kissing her. According to H.H., she moved to Tennessee in August 2014 to live with her biological father because she "didn't want to deal with it anymore" and she "had enough" of Hernandez.

Hernandez's daughter, K.M., testified she was eight years old when Hernandez started touching her "private parts" both over and under her clothes, making her feel uncomfortable. She remembers he would take her to a beach in a red van and take off her clothes while he took off his. After laying the seats down, Hernandez would touch his "pee part" with her "pee part." When she asked him to stop, he would hit her face with his hand telling her to "be quiet." In a mean voice, he would tell her, "don't tell nobody." Sometimes, Hernandez would put a sock in her mouth because she would start crying, asking him to stop. K.M. testified she was around ten or eleven years old when Hernandez touched her "poop part" on the outside and inside with his private part underneath her clothes. These incidents occurred at the beach, Hernandez's house, and Lydia's house. She testified the last time this happened was when she was around twelve years old at Lydia's house. Lydia confirmed there were times that H.H. and K.M. would come over to Lydia's while Hernandez was living with her while he was on community supervision.

The trial court found Hernandez violated a condition of his community supervision, revoked his community supervision, and sentenced him to sixty years' confinement. Hernandez filed a motion to reconsider, which the trial court later denied at the sentencing hearing. This appeal followed.

## II. SUFFICIENCY

By his first issue, Hernandez argues the evidence is insufficient to establish by a

4

preponderance that a violation occurred during his community supervision. Specifically, he alleges the State failed to prove he committed an act of sexual abuse on more than one occasion during his community supervision because "the only incident that was shown to occur between June 13, 2013, and May 17, 2015, is the single instance of [Hernandez] allegedly touching H.H. on her breasts, vagina, and anus, sometime in the summer of 2014." The State argues this evidence is sufficient to prove by a preponderance that Hernandez violated his community supervision by committing an offense against the laws of this State through the lesser-included offense of indecency with a child. We agree with the State.

## A.    Standard of Review

We review a trial court's revocation of community supervision under an abuse of discretion standard. *See Belt v. State*, 127 S.W.3d 277, 280 (Tex. App.—Fort Worth 2004, no pet.). A trial court abuses its discretion if it revokes community supervision on grounds that are not alleged in the State's motion to revoke. *Caddell v. State*, 605 S.W.2d 275, 277 (Tex. Crim. App. [Panel Op.] 1980). An order revoking community supervision must be supported by a preponderance of the evidence. *See id.* In other words, the burden of proof is on the State to establish that the greater weight of the credible evidence creates a reasonable belief that the defendant has violated a condition of his community supervision. *See Maxey v. State*, 49 S.W.3d 582, 584 (Tex. App.—Waco 2001, pet. ref'd). We view the evidence presented at the revocation hearing in the light most favorable to the trial court's decision. *See Liggett v. State*, 998 S.W.2d 733, 736 (Tex. App.—Beaumont 1999, no pet.).

When a trial court fails to make specific findings of fact and conclusions of law, it

5

is presumed that the court made the necessary findings to support its decision. *Ice v. State*, 914 S.W.2d 694, 695 (Tex. App.—Fort Worth 1996, no pet.). We do not engage in our own fact finding, but rather we review the entire record to determine whether there are any facts that lend support for any theory upon which the trial court's decision can be sustained. *Id*. at 696. If the implied or actual finding is supported by the record, it must be sustained. *Id*.

**B.     Applicable Law**

Proof of a violation of one condition of community supervision is sufficient to support the trial court's decision to revoke. *Garcia v. State*, 387 S.W.3d 20, 26 (Tex. Crim. App. 2012). Additionally, a trial court may revoke a defendant's community supervision if the State proves a lesser included offense than what has been alleged. *See Greer v. State*, 783 S.W.2d 222, 224 (Tex. App.—Dallas 1989, no pet.) ("Since an accused may be tried and convicted of a lesser included offense other than that alleged in an indictment, we conclude that a probationer is likewise accountable for lesser offenses included within the offense alleged in the motion to revoke.").

Indecency with a child is lesser included offense of continuous sexual abuse. *Price v. State*, 434 S.W.3d 601, 606 (Tex. Crim. App. 2014) (finding that a predicate offense listed under Texas Penal Code § 21.02(c) will always be a lesser offense of continuous sexual abuse, because the latter is, by its very definition, the commission under certain circumstances of two or more of the offenses listed in that subsection). Accordingly, if the evidence is sufficient to support a finding of indecency with a child, then the trial court did not err by revoking Hernandez's community supervision. *See Greer*, 783 S.W.3d at 224.

6

**C.      Discussion**

The State's motion to revoke alleged that Hernandez committed the offense of continuous sexual abuse of a child from June 13, 2013 through May 17, 2015. At the revocation hearing, H.H. testified that Hernandez touched her inappropriately about ten times. The last time he did so was when she was twelve or thirteen years old right before she moved to Tennessee around August of 2014. H.H. claims Hernandez touched her breasts, vagina, butt, and he kissed her. He told her not to tell anyone what happened. According to H.H., this is the reason why she moved to Tennessee: she wanted to get away from Hernandez. Moreover, K.M. testified that Hernandez began touching her vagina when she was eight years old (2011) and the last time Hernandez touched her inappropriately was at Lydia's home when she was twelve years old (2015). Hernandez was on community supervision when he committed this offense.

The trial court found that K.M. and H.H. were both "extremely credible" and that Hernandez violated the terms of his community supervision based on H.H.'s testimony with regard to the last time she was sexually molested. Although Hernandez argues this is insufficient to prove continuous sexual abuse of a child, we do not need to address whether the evidence established that he committed the crime of continuous sexual abuse of a child during his community supervision period. We only need to consider whether a preponderance of the evidence showed that Hernandez committed a lesser included offense of continuous sexual abuse of a child during his community supervision. *See Greer*, 783 S.W.2d at 224.

Based on a review of the record, we conclude the evidence supports the trial court's finding, by a preponderance of the evidence, that Hernandez committed the

7

offense of indecency with a child—a lesser included offense of continuous sexual abuse of a child as alleged in the State's motion to revoke. Because Hernandez's community supervision was conditioned on his not committing additional crimes, there was evidence in the revocation proceeding that he violated that condition, and that crime was a lesser-included offense of continuous sexual abuse of a child as alleged in the motion to revoke, the evidence presented at Hernandez's revocation hearing is legally sufficient to support the trial court's decision to revoke. *See Garcia*, 381 S.W.3d at 26; *Greer*, 783 S.W.2d at 224. We overrule Hernandez's first issue.

### III.     PRONOUNCEMENT OF GUILT

By his second issue, Hernandez argues "the trial court failed to adjudicate [his] guilt before pronouncing [his] sentence, rendering the sentence void."[4]

The trial court's failure to verbalize the adjudication of guilt does not render the judgment void. *Villela v. State*, 564 S.W.2d 750, 751 (Tex. Crim. App. [Panel Op.] 1978). Beyond the pronouncement of sentence, "no further ritual or special incantation from the bench is necessary to accomplish an adjudication of guilt." *Jones v. State*, 795 S.W.2d 199, 201 (Tex. Crim. App. 1990) (en banc). Rather, the trial court's action in assessing punishment after a hearing is an implied rendition of guilt. *See Villela*, 564 S.W.2d at 751. Further, a written judgment is valid even in the absence of an express oral pronouncement of guilt by the trial court. *Sanchez v. State*, 222 S.W.3d 85, 88 (Tex. App.—Tyler 2006, no pet.); *Parks v. State*, 960 S.W.2d 234, 238 (Tex. App.—Houston [1st Dist.] 1997, pet. ref'd) (citing *Villela*, 564 S.W.2d at 751).

Here, the trial court implicitly found Hernandez guilty of the underlying offense for

---

[4] We note that Hernandez filed a motion "asking for the [trial] Court to reconsider its guilty verdict."

8

which community supervision was ordered when it found that he violated the conditions of his community supervision and scheduled a punishment hearing to be conducted at a later time. No "further ritual or special incantation" was required. *See Jones*, 795 S.W.2d at 201. Further, the trial court's written judgment "adjudicating guilt" reflects that the trial court adjudicated Hernandez guilty. *See Sanchez*, 222 S.W.3d at 88. Because the trial court implicitly found Hernandez guilty before beginning a punishment hearing, it did not err when it assessed punishment. Accordingly, we overrule his second issue.

## IV. PUNISHMENT EVIDENCE

In his third issue, as we understand it, Hernandez generally asserts that he was entitled to a punishment hearing after the adjudication of guilt, and the trial judge should have allowed him the opportunity to present evidence on punishment issues. However, the record establishes the trial court held a separate punishment hearing in which Hernandez presented mitigating evidence in the form of testifying witnesses along with mitigating factors relevant to sentencing. The trial court sentenced Hernandez only after it considered all the evidence adduced at the punishment hearing. Therefore, Hernandez was given the opportunity to be heard on the issue of punishment, and we see no merit in this argument. We overrule his third issue.

## V. SENTENCING

Finally, Hernandez argues that his sentence is excessive and disproportionate because the Eight Amendment forbids cruel and unusual punishment. *See* U.S. CONST. amend. VIII. The State asserts Hernandez failed to preserve error on this issue.

To preserve a complaint for appellate review that a sentence is grossly disproportionate, constituting cruel and unusual punishment, a defendant must present

to the trial court a timely request, objection, or motion stating the specific grounds for the ruling desired. *See* TEX. R. APP. P. 33.1(a); *Wynn v. State*, 219 S.W.3d 54, 61 (Tex. App.—Houston [1st Dist.] 2006, pet ref'd) (holding that a defendant's failure to object to his life sentence of imprisonment as cruel and unusual punishment waived error); *Solis v. State*, 945 S.W.2d 300, 301 (Tex. App.—Houston [1st Dist.] 1997, pet. ref'd) (holding that a defendant could not assert cruel and unusual punishment for the first time on appeal).

After the trial court announced its sentence at the punishment hearing, Hernandez failed to object based on a violation of his Eighth Amendment right. Accordingly, we hold that he has failed to preserve his Eighth Amendment complaint for review. Even if Hernandez had preserved error for our review, he was convicted of two counts of aggravated sexual assault of a child, a first-degree felony, which is punishable by imprisonment for life or for any term of not more than 99 years or less than five years. *See* TEX. PENAL CODE ANN. § 12.32 (West, Westlaw through 2017 1st C.S.). Therefore, his sentence of sixty years is within the punishment range. *Trevino v. State*, 174 S.W.3d 925, 927 (Tex. App.—Corpus Christi 2005, pet. ref'd) (holding punishment within the statutory range is not cruel and unusual). We overrule his last point of error.

## VI.    CONCLUSION

Having overruled Hernandez's issues, we affirm the trial court's judgment.

NORA L. LONGORIA
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
9th day of May, 2019.