**Richard C. WARE, III, Appellant,**

v.

**The STATE of Texas, State.**

**No. 2–00–428–CR.**

Court of Appeals of Texas,
Fort Worth.

Dec. 6, 2001.

Rehearing Overruled Jan. 10, 2002.

---

Richard Alley, Fort Worth, for appellant.

Tim Curry, Criminal District Attorney, Charles M. Mallin, Assistant Criminal District Attorney and Chief of the Appellate Section; Donald J. Piller, Lisa A. Callaghan, and Mary R. Butler, Assistant Criminal District Attorneys, Fort Worth, for appellee.

Panel A: CAYCE, C.J., LIVINGSTON and GARDNER, JJ.

## OPINION

TERRIE LIVINGSTON, Justice.

### INTRODUCTION

Appellant Richard C. Ware, III was indicted for one count of aggravated sexual assault of a child under 14 and one count of indecency with a child by contact. Appellant pled not guilty to both charges and the jury returned a guilty verdict on both counts. With a nunc pro tunc judgment, the trial court sentenced appellant to 75 years' confinement on count one and ten years' confinement on count two. Appellant presents five points for review on

appeal. Appellant contends that: (1) the evidence is legally and factually insufficient to support his conviction; (2) the trial court abused its discretion in submitting the jury charge with an erroneous instruction concerning extraneous offense evidence; (3) the trial court erred in resentencing appellant after he had filed his notice of appeal and that this, in effect, granted appellant's motion for new trial; and (4) the trial court abused its discretion in admitting hearsay testimony. We affirm the trial court's judgment.

## BACKGROUND

S.W., the victim, is appellant's daughter. Soon after S.W. was born in 1990, appellant and S.W.'s mother, Joanne P., broke up. Appellant had little contact with S.W. until the summer of 1995, when she began to visit him on weekends at his apartment in Fort Worth, Texas, where he lived with his fiancee, Brandi W. Although S.W. was originally excited about these visits, she eventually became reluctant, even frightened. S.W.'s half-sister, H.P., testified at trial that S.W. "begged" her mother not to go and cried about having to visit her father. S.W. testified that during these visits, which occurred between August and December of 1995, appellant sexually assaulted her at least twice. H.P. testified that S.W. complained that her "tee-tee" hurt after she stopped visiting appellant.

In 1998, H.P. and S.W. were watching a movie called "Liar, Liar" on television about a girl who was molested by her father. H.P. asked S.W. if "anybody ha[d] ever done that to her." S.W. responded that "[appellant] did that to me." H.P. told their grandmother, Marilyn Hubbard.

On November 3, 1998, Hubbard took S.W. to see Dr. Ann Sims, a gynecologist who worked as a medical consultant on child sexual assault cases at the Advocacy Center in Waco, Texas. Dr. Sims testified that:

> [S.W.] stated that [appellant], her mom's ex-husband ... "Did s-e-w with me." She said it happened ... "More than once." She said that it happened when she was in kindergarten. She said ... "He touched my private parts, both front and back. His front private part touched me. His private part was in, not on me. His front went in my back." She said, "It hurt, was hard and hot, and she felt it go in, and it hurt." And she said, "He told me not to tell," and she was afraid she would get in trouble.

Dr. Sims also testified that S.W. told her that appellant sexually assaulted her five to ten times.

Dr. Sims testified that in most cases in which the child does not make an immediate outcry, a physical exam is normal eighty-five percent of the time because of the resiliency of children's bodies. Dr. Sims noted that her physical examination of S.W. revealed that her vaginal opening was "quite large" and "gaping" which was abnormal for a child of S.W.'s weight and age. Dr. Sims further stated that the rate at which S.W.'s anus dilated when she was placed in a certain position was "suspicious for anal penetration."

Dr. Sims testified that due to the nature of sexual abuse cases, she always "erred on the conservative side" concerning her conclusions. Her conclusions regarding S.W.'s examination were "nonspecific," but she also testified that the examination was consistent with S.W.'s story.

## DISCUSSION

### Legal and Factual Sufficiency

 In reviewing the legal sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to the verdict. *Cardenas v.*

*State,* 30 S.W.3d 384, 389–90 (Tex.Crim. App.2000). The critical inquiry is whether, after so viewing the evidence, any rational jury could have found the essential elements of the crime beyond a reasonable doubt. *McDuff v. State,* 939 S.W.2d 607, 614 (Tex.Crim.App.), *cert. denied,* 522 U.S. 844, 118 S.Ct. 125, 139 L.Ed.2d 75 (1997). This standard gives full play to the responsibility of the jury to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). Our duty is not to re-weigh the evidence from reading a cold record but to act as a due process safeguard ensuring only the rationality of the jury. *Williams v. State,* 937 S.W.2d 479, 483 (Tex.Crim.App.1996). The verdict may not be overturned unless it is irrational or unsupported by proof beyond a reasonable doubt. *Matson v. State,* 819 S.W.2d 839, 846 (Tex.Crim.App.1991).

■ In reviewing the factual sufficiency of the evidence to support a conviction, we are to view all the evidence in a neutral light, favoring neither party. *Johnson v. State,* 23 S.W.3d 1, 7 (Tex. Crim.App.2000). Evidence is factually insufficient if it is so weak as to be clearly wrong and manifestly unjust or the adverse finding is against the great weight and preponderance of the available evidence. *Id.* at 11. Therefore, we must determine whether a neutral review of all the evidence, both for and against the finding, demonstrates that the proof of guilt is so obviously weak as to undermine confidence in the verdict, or the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof. *Id.* In performing this review, we are to give due deference to the jury's determinations. *Id.* at 8–9. Consequently, we may find the evidence factually insufficient only where

necessary to prevent manifest injustice. *Id.* at 9, 12; *Cain v. State,* 958 S.W.2d 404, 407 (Tex.Crim.App.1997).

■ The only true factual dispute in this case was whether appellant actually committed the acts as S.W. claims he did. In resolving all inferences in favor of the verdict, we will assume that the jury believed S.W. and did not believe appellant. S.W.'s description of what appellant did to her is more than adequate to establish the elements of the offenses in sections 21.11 and 22.021 of the penal code. *See* TEX. PENAL CODE ANN. §§ 21.11(a)(1), 22.021(a)(1)(B)(i), (iii) (Vernon Supp.2002). We conclude that the evidence presented to the jury in this case was legally sufficient.

■ In urging that the evidence in this case was factually insufficient, appellant attacks S.W.'s credibility and points out that her testimony was uncorroborated. First, appellant contends that because the medical exam was "normal," S.W.'s testimony was not corroborated. The record does not support this assertion. Although Dr. Sims testified that it could not be conclusively established that S.W. was sexually assaulted, the exam was "consistent" with her story. The abnormalities that Dr. Sims discovered did not contradict S.W.'s version of the events.

Second, appellant suggests that his refusal to pay child support to S.W.'s mother resulted in the allegations of sexual abuse. The record does not support this assertion either. Both Brandi W. and appellant testified that it was the allegations of sexual abuse that ended the child support payments. Appellant also points to other inconsistencies to challenge S.W.'s credibility. S.W. testified that appellant told her that his apartment was "right over the fence" from Six Flags. Appellant interprets this as S.W. not being able to tell the truth about where appellant lived. This

matter is trivial, collateral, and cannot rise to the level of convincing us that appellant's conviction is greatly outweighed by contrary proof. Further, we must defer, except in limited circumstances, to the jury's evaluation of S.W.'s credibility. *See Johnson*, 23 S.W.3d at 9. We conclude that the evidence in this case was factually sufficient. Because we have concluded that the jury's verdict was supported by legally and factually sufficient evidence, appellant's first point is overruled.[1]

### Hearsay Testimony

■ In appellant's fifth point, he argues that the trial court abused its discretion in admitting Dr. Sims' testimony about what S.W.'s grandmother, Hubbard, told her during the examination regarding S.W.'s fear of her father and her desire not to go back to visit him.[2] On direct examination of Dr. Sims, the following occurred:

Q. [BY STATE] Did you take a medical history from her grandmother as well?

A. I took the past medical history from her grandmother. Children have a difficult time telling me about their past medical histories, yes.

Q. So you took history from the adult as well as from the child?

A. Yes, I did.

Q. Okay. And what did the grandmother tell you about her reaction?

A. The grandmother said that she—

[APPELLANT'S COUNSEL]: I'm going to object to what the grandmother said. Her reaction is one thing, but what she said, I object to.

[STATE]: Your Honor, medical history for a child may be taken either from an adult or a child.

THE COURT: I'm going to overrule.

[APPELLANT'S COUNSEL]: Thank you.

Q. [BY STATE]: Go ahead.

A. The grandmother said that she was afraid and did not want to go back.

■ We review the trial court's evidentiary rulings under an abuse of discretion standard. *Metts v. State*, 22 S.W.3d 544, 550 (Tex.App.—Fort Worth 2000, pet. ref'd). Appellant appears to argue that the hearsay exception concerning medical exams does not apply to statements made by Hubbard, the victim's grandmother. Rule 803(4) of the rules of evidence is an exception to the hearsay rule for statements "made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment." TEX.R. EVID. 803(4). The reliability of these statements is based on the assumption that persons understand that the correctness of the diagnosis or the effectiveness of treatment may depend on the truth of the informa-

---

1. Appellant urges us to overrule *Malik v. State*, 953 S.W.2d 234, 239 (Tex.Crim.App. 1997). We cannot overrule the court of criminal appeals. *See Jurdi v. State*, 980 S.W.2d 904, 907 (Tex.App.—Fort Worth 1998, pet ref'd). Additionally, *Malik* does not impact our sufficiency review because appellant has not pointed to a difference between the elements of the these two offenses as they would appear in a "hypothetically correct" charge and how they actually appear in the charge that was given.

2. Appellant's point complains only of Hubbard's statement to Dr. Sims, yet his brief discusses double hearsay, apparently further attacking the admission of S.W.'s "statement" to Hubbard. Although appellant's less than clear objection at trial could be construed to preserve this point, there was no error in admitting S.W.'s statement to her grandmother that she was "afraid." *See* TEX.R. EVID. 803(3).

tion given to the doctor.[3] *Fleming v. State*, 819 S.W.2d 237, 247 (Tex.App.— Austin 1991, pet. ref'd). Although the exception is not limited to statements by patients, the person making the statement must have an interest in proper diagnosis or treatment. *Sandoval v. State*, 52 S.W.3d 851, 856–57 (Tex.App.—Houston [1st Dist.] 2001, pet. ref'd). Parents normally possess this interest in the well-being of their children. *Id.; cf. Floyd v. State*, 959 S.W.2d 706, 712 (Tex.App.— Fort Worth 1998, no pet.) (concluding that statements of the girlfriend of the victim's father to doctor fell within the 803(4) exception).

We can find no reason to apply this rule to parents, but not to grandparents. A grandparent may have an identical, or an even greater motive than a parent may have in obtaining a correct diagnosis for a child. There may be circumstances, especially in child sex abuse cases, in which the statement is motivated by improper reasons such as wanting to "shift the blame" or a personal dislike of the accused. *See United States v. Yazzie*, 59 F.3d 807, 813 (9th Cir.1995) (interpreting identical federal rule of evidence 803(4)). Because the record does not show that Hubbard had any motive to make this statement other than a desire to care for S.W., we cannot say that the trial court abused its discretion in admitting this testimony.

Appellant also argues that the statements that Hubbard made to Dr. Sims had "nothing to do with the exam ... and did not relate to medical treatment." In child sex abuse cases, the injury is often as much psychological as it is physical in na-

ture. *United States v. Renville*, 779 F.2d 430, 436 (8th Cir.1985) (interpreting identical federal rule of evidence 803(4)). The nature and extent of the psychological harm may depend on the identity of the abuser. *Id.* Accordingly, Texas courts have held that the *identity* of the accused may be "reasonably pertinent to medical diagnosis and treatment," and thus statements concerning the identity of the abuser fall within this exception to the hearsay rule. *Fleming*, 819 S.W.2d at 247; *Tissier v. State*, 792 S.W.2d 120, 125 (Tex.App.— Houston [1st Dist.] 1990, pet. ref'd); *Macias v. State*, 776 S.W.2d 255, 259 (Tex. App.—San Antonio 1989, pet. ref'd).

In this case, Hubbard did not expressly name appellant as the abuser. We see no reason, however, to distinguish between statements that expressly name the alleged abuser and the statement in this case that S.W. was afraid of the alleged abuser. Although Dr. Sims was required to make an inference, this statement would be no less "pertinent to diagnosis or treatment" than a statement expressly accusing appellant. Thus, we conclude that the trial court did not abuse its discretion in admitting Hubbard's statement that S.W. was afraid of appellant. Appellant's fifth point is overruled.

## Jury Charge Error

In his second point, appellant argues that the jury charge was defective because it included an instruction based on article 38.37 of the code of criminal procedure. Appellant contends this statute is unconstitutional.[4] Section two of article 38.37 provides the following:

---

3. Some courts have noted concerns that children may not be able to appreciate this need to provide the doctor with truthful information. *Molina v. State*, 971 S.W.2d 676, 684 (Tex.App.—Houston [14th Dist.] 1998, pet.

ref'd). In this case, however, the statement was made by S.W.'s grandmother.

4. We note that appellant has waived any state constitutional claims because he has not explained why the state constitution offers any

Notwithstanding Rules 404 and 405, Texas Rules of Criminal Evidence, evidence of other crimes, wrongs, or acts committed by the defendant against the child who is the victim of the alleged offense shall be admitted for its bearing on relevant matters, including:

(1) the state of mind of the defendant and the child; and

(2) the previous and subsequent relationship between the defendant and the child.

TEX.CODE CRIM. PROC. ANN. art. 38.37, § 2 (Vernon Supp.2002).

The jury charge included the following paragraph.

You are instructed that if there is any testimony before you in this case regarding the Defendant's having committed offenses against the alleged victim other than the offense alleged against him in the Indictment in this case, you cannot consider said testimony for any purpose unless you find and believe beyond a reasonable doubt that the Defendant committed such other offenses, if any were committed, and even then you may only consider the same in determining the state of mind of the Defendant and the child and the previous and subsequent relationship between the Defendant and the child.

▇▇ In our review of article 38.37, we must presume its validity and also presume that the Legislature did not act unreasonably or arbitrarily in enacting it. *Wilson v. State*, 44 S.W.3d 602, 604 (Tex. App.—Fort Worth 2001, pet. ref'd). Further, appellant has the burden of showing that this law is unconstitutional. *Id.* Although appellant's objection at trial and

greater protection than the federal constitution. *See Emery v. State*, 881 S.W.2d 702, 707 n. 8 (Tex.Crim.App.1994), *cert. denied*, 513

his brief are less than clear, we see essentially three arguments.

▇▇ Appellant's first argument is that this instruction diminishes the State's burden of proof. We reject this argument. Due process requires that a conviction be based on proof beyond a reasonable doubt of every fact that constitutes the charged offense. *Jones v. State*, 955 S.W.2d 438, 439 (Tex.App.—Fort Worth 1997, pet. ref'd). Article 38.37, however, says nothing about the State's burden of proof. This provision only allows evidence that assists the State in proving these facts beyond a reasonable doubt. *Jenkins v. State*, 993 S.W.2d 133, 136 (Tex.App.—Tyler 1999, pet. ref'd). Further, in this case, the trial court crafted the instruction so that this burden of proof was applied not only to the charged offense, but also to the extraneous offenses before they could be considered by the jury.

▇▇ Second, appellant argues, as we understand it, that admitting the evidence for two purposes is confusing and creates a danger that the jurors will consider the evidence for impermissible purposes. Juries, however, are presumed to follow the instructions of the trial court. *See Williams*, 937 S.W.2d at 490. Because appellant does not provide evidence to the contrary, this presumption survives.

▇▇ Lastly, appellant argues that the language of the charge assumes that there was a "previous and subsequent" relationship between appellant and S.W. Appellant suggests that this was a comment on the weight of the evidence and claims that this language assumes a controverted fact issue and is thus improper. The State assumes, and we believe correctly so, that the appellant has misconstrued this language to

U.S. 1192, 115 S.Ct. 1257, 131 L.Ed.2d 137 (1995).

mean "previous and subsequent" *victimization* of the child. This language in the statute, and as used in the charge, means that jurors may use extraneous offenses to explain why someone in a position of trust would commit a crime of this nature against their own child. "[M]ost jurors are reluctant to believe that parents ... would commit sexual or physical crimes against their own ... children. Such evidence not only shows that a peculiar relationship exists, but also how and why the defendant achieved dominance over the child." *Jenkins*, 993 S.W.2d at 136 (quoting *Ernst v. State*, 971 S.W.2d 698, 700 (Tex.App.—Austin 1998, no pet.)). This language does not assume that any illicit conduct took place, but if it did, allows juries to use extraneous offense evidence to answer the question of why the conduct occurred. Having addressed each of his arguments and in light of the presumption of the statute's validity, we overrule appellant's second point.

## Nunc Pro Tunc Resentencing

On September 22, 2000, the trial court conducted a punishment hearing. At the conclusion of the hearing, the trial court stated that it would "assess [appellant's] punishment at 75 years in the [TDCJ]. It is therefore the order, judgment, decree of this Court that you be sentenced to 75 years confinement in the [TDCJ]." The trial court did not mention either count. On the same day, the appellant filed a pro se notice of appeal. Also on the same day, the trial court signed its judgment which read under the punishment section: "COUNT ONE AND TWO–SEVENTY-FIVE (75) YEARS."

On September 29, appellant's counsel on appeal filed a motion for new trial which claimed:

The Trial court erred in sentencing [appellant] to a term of confinement of 75 years in prison in that the maximum punishment for count 2 is 20 years confinement. Since punishment was heard by the Court and the trial court lacks authority to grant a new trial on the issue of punishment alone a new trial is required.

On October 4, 2000, the trial court held a second punishment hearing at which the trial court stated:

[T]here was an order that this Court signed on the 22nd of September, 2000, sentencing [appellant] to 75 years in the penitentiary and there was two counts; therefore, I'm going to pro tunc that order.

The trial court went on to sentence appellant to 75 years' confinement on the aggravated sexual assault count and 10 years' confinement on the indecency with a child by contact count, both sentences to run concurrently. The next day, the trial court signed an order entitled "Nunc Pro Tunc Order Correcting the Minutes of the Court" that reflected these changes.

In his third and fourth points, appellant contends that the trial court did not have the right to re-sentence him because his appeal was pending at the time. Alternatively, appellant argues that this resentencing granted a motion in arrest of judgment and as a result, he is in effect entitled to a new trial. *See* Tex.R.App. P. 22.6.

First of all, the timing of the second sentencing hearing does not present error. Appellant contends that holding the hearing after he filed his notice of appeal is not allowed by rule 23.1 of the rules of appellate procedure. Tex.R.App. P. 23.1. Rule 23.1 provides that a nunc pro tunc proceeding may occur in criminal cases at any time "unless the defendant has appealed." *Id.* Under the predecessors to rule 23.1, analogous language was

interpreted to allow the trial court to act at any time prior to the appellate record being filed in the court of appeals. *Jones v. State,* 795 S.W.2d 199, 201 (Tex.Crim.App. 1990) ("[W]e regard our body of case law construing these statutes to have continued vitality under the current Rules of Appellate Procedure."); *Williams v. State,* 675 S.W.2d 754, 765 n. 6 (Tex.Crim.App. 1984). In this case, the record was filed on February 1, 2001, almost four months after the date of the nunc pro tunc order. We therefore conclude that the timing of appellant's resentencing does not present error.

■■■ To determine if appellant is entitled to a new trial, we must next address whether appellant's resentencing could be interpreted as granting his motion for new trial or a motion in arrest of judgment. Motions for new trial must be granted by a written order. Tex.R.App. P. 21.8(b). Because there is no written order granting appellant's motion for new trial, the trial court's action cannot be interpreted as granting his motion for new trial.

■■■ Motions in arrest of judgment, however, do not require a written order. Tex.R.App. P. 22.4(a). Despite its label, we agree that the portion of appellant's motion for new trial complaining of the incorrect sentence could be characterized as a motion in arrest of judgment. Tex.R.App. P. 22.2(c) (stating that motions in arrest of judgment may be based on grounds that the judgment is invalid); *see State v. Evans,* 843 S.W.2d 576, 577 (Tex.Crim.App. 1992). We disagree, however, that the act of resentencing appellant amounted to a ruling that granted this motion. Appellant cites several cases for the proposition that orders granting a motion may be implied. *See, e.g., State v. Savage,* 905 S.W.2d 268, 269 (Tex.App.—San Antonio 1994), *aff'd,* 933 S.W.2d 497 (Tex.Crim.App.1996). All of these cases rely on the same general

reasoning that allows us to characterize appellant's motion for new trial as a motion in arrest of judgment. Simply put, the heading or name of a motion, or in these cases an order, has nothing to do with the document's legal effect. The cases cited by appellant deal with express orders that are *misnamed,* not orders or rulings that are implied. In this case there was no written order, or even an oral ruling, addressing appellant's motion. We conclude, therefore, that resentencing appellant did not grant his motion for new trial or motion in arrest of judgment.

The issue remains as to whether the resentencing was a proper correction by nunc pro tunc judgment. There are two ways to interpret the actions of the trial court at the original sentencing hearing. When the trial court originally stated that appellant would be sentenced to "75 years" without reference to either count of the indictment, the court could have meant: (1) that appellant was sentenced to 75 years under count one and 75 years under count two, or (2) that he was sentenced to 75 years under count one, but no sentence under count two.

■■■ Neither interpretation, however, allows the error to be corrected under the traditional meaning of a nunc pro tunc judgment. A nunc pro tunc judgment may be used to correct clerical errors in a judgment, but may not be used to correct judicial omissions. *Ex parte Dopps,* 723 S.W.2d 669, 670 (Tex.Crim.App.1986). The purpose of such an order is to correctly reflect from the records of the court the judgment actually "rendered," but which for some reason was not "entered" at the proper time. *Jones,* 795 S.W.2d at 201. Therefore, before a nunc pro tunc judgment may be entered or recorded, there must be proof that the proposed judgment was *actually rendered at an earlier time. Id.* In this case, the trial court either com-

pletely failed to sentence appellant on count two or the sentence on count two was wrong. A ten-year sentence on count two was never actually rendered. Thus, it was not proper to correct this mistake by a nunc pro tunc judgment. We believe, however, that judgments nunc pro tunc are not the only way a trial court may correct its own judgments.

 In civil cases, it is clear that the limitations on nunc pro tunc judgments are in place because that power may be exercised even when the court's plenary power over the underlying judgment has expired. *See, e.g., In re Bridges,* 28 S.W.3d 191, 195 (Tex.App.—Fort Worth 2000, no pet.); *Jenkins v. Jenkins,* 16 S.W.3d 473, 482 (Tex.App.—El Paso 2000, no pet.). Language noting this may also be found in criminal cases. *E.g., State v. Bates,* 889 S.W.2d 306, 309 (Tex.Crim.App.1994). "[The predecessor to rule 23.1] vests a trial court with the authority to correct mistakes or error in a judgment or order *after the expiration of the court's plenary power,* via entry of a judgment nunc pro tunc." *Id.* (emphasis added). During their plenary power period, trial courts in civil cases possess an inherent power to "correct, modify, vacate, or amend its own rulings." *Awadelkariem v. State,* 974 S.W.2d 721, 728–29 (Tex.Crim.App.1998) (Meyers, J., concurring) (citing *Eichelberger v. Eichelberger,* 582 S.W.2d 395, 398 & n. 1 (Tex.1979)). The law is not clear, however, that trial courts possess this power in criminal cases.

 This case demonstrates why courts should have this power in criminal cases. In this case, the trial court committed an obvious inadvertent mistake in fail-

ing to announce the sentence on count two and in signing the judgment that purported to assess 75 years' confinement on both counts. Once this mistake was pointed out to the trial court in appellant's motion for new trial, the court was faced with the choice of either granting an entire new trial on guilt/innocence and punishment or watching helplessly as a claim of reversible error was taken to this court. Allowing a trial court to "correct, modify, vacate, or amend its own rulings" is "a necessary function of an efficient judiciary." *Id.; see also Gutierrez v. State,* 979 S.W.2d 659, 664 (Tex.Crim.App.1998) (Meyers, J., concurring). We agree with the opinions of other courts of appeals that have concluded that trial courts in criminal cases possess this power. *See McClinton v. State,* 38 S.W.3d 747, 751 (Tex.App.—Houston [14th Dist.] 2001, pet. granted); *Verdin v. State,* 13 S.W.3d 121, 123 (Tex.App.—Tyler 2000, no pet.). Because it had an inherent power to do so, it was proper for the trial court to correct the judgment in this case.[5] Points three and four are overruled.

## CONCLUSION

Having overruled each of appellant's points on appeal, the judgment of the trial court is affirmed.

---

5. It is unclear what time limitations should be imposed on this power. The term "plenary power" is almost never used in criminal cases. Judge Meyers noted that this power is "limited ... by the court's retention of juris- diction or statutory authority over the matter." *Awadelkariem,* 974 S.W.2d at 729. In this case, appellant's motion for new trial was still pending at the time of the resentencing. *See* TEX.R.APP. P. 21.8(a).