In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-02-315 CR


____________________



DOUGLAS JEROME MYERS , Appellant



V.



THE STATE OF TEXAS, Appellee






On Appeal from the 217th District Court


Angelina County, Texas


Trial Court Cause No. 22,825






O P I N I O N


 Douglas Jerome Myers appeals a judgment after a bench trial finding him guilty of
the offense of deadly conduct by discharging a firearm in the direction of a habitation,
being reckless as to whether the habitation was occupied. See Tex. Pen. Code Ann. §
22.05(b)(2), (Vernon 1994). This third-degree felony was enhanced to a second-degree
felony due to Myers's previous felony conviction. He received a sentence of four years
in the custody of the Texas Department of Criminal Justice--Institutional Division. See
Tex. Pen. Code Ann. §§ 12.33, 12.34, 12.42 (a), 25.05 (e) (Vernon 1994). Myers
challenges the legal and factual sufficiency of the evidence to support his conviction. 

 In reviewing the legal sufficiency of the evidence, the issue is whether any rational
trier of fact could have found the essential elements of the crime charged beyond a
reasonable doubt, when viewing the evidence in the light most favorable to the verdict. 
See Jackson v. Virginia, 443 U.S. 307, 319, 61 L.Ed2d 560, 99 S.Ct. 2781 (1979). In
reviewing factual sufficiency, an appellate court reviews the evidence weighed by the trier
of fact that tends to support the existence of the facts in dispute and compares it with the
evidence that tends to disprove such facts. See Johnson v. State, 23 S.W.3d 1, 11 (Tex.
Crim. App. 2000). The appellate court will set aside the trier of fact's determination only
if the proof of guilt is so obviously weak as to be clearly wrong, or the proof of guilt,
although adequate if taken alone, is so contrary to the great weight and preponderance of
the evidence as to be clearly wrong or manifestly unjust. Id. 

 Anthony Davis testified that on January 27, 2001, he observed Myers and Steven
Chapman fighting in front of his house at 419 Arena, Lufkin, Texas. Davis went out to
break up the altercation, and as Myers walked away, Davis heard him say, "Just wait. I'll
be back." Davis and his wife returned inside. He testified that five minutes later he heard
four or five shots fired from the front of his house. He called the police. (In an earlier
statement to police, Davis said that thirty minutes had passed between Myers's departure
and the gun shots.). The glass in his front door and at the top of the porch were shattered
by the shots. When the shots were fired, Davis's young son was inside the house lying on
a couch in close proximity to the front door. No one was injured by the shots. Davis did
not see the shooter. 

 Shirley Davis, Anthony's wife, testified that Myers and Steven Chapman "got into
it in front of [the] house." She saw her husband standing on the porch, and told him to
stop the fight. He told all of them to leave. Steven Chapman and Alisha Coutee got into
a car. Myers started walking down the street towards the place where he lived, two blocks
away. She heard Myers say "I'll be back." Myers sounded angry. Shirley then went to
her car to go to work, but turned around and went back into the house. She was not
pleased with the manner in which her husband had handled the situation, and told him so. 
She testified she warned him that someone would shoot into the house. As soon as she
said this, she heard a shot, glass shatter, and her little boy scream. She was concerned as
to how far she had left open the front door and that her son was lying near the front door.
After the scream, she heard the second of two shots. The shots shattered the glass from
the front door and the lights. She did not see the shooter. 

 Clifton Kibble was 14 years old at the time of trial. He was at home on the day of
the shooting. He testified that he heard an argument outside of the house before the
shooting and heard someone say he would be back. He heard someone drive away. He
was lying on the couch close to the door when he heard two shots and breaking glass. The
shots appeared to be coming from the front yard. He did not see the shooter. Alisha
Coutee was at Anthony Davis's house on January 27, 2001, with her cousin, Steven
Chapman. Douglas Myers drove up in a green car, accompanied by a girl, and he was
talking loud and "cussing". Myers appeared to have been drinking and was upset. The
girl dropped him off and left. Myers hit Chapman and the two started fighting. Anthony
Davis came outside and told Myers "that it was all right" and Coutee got Chapman to
move on. She observed Myers walk away in the direction of his house. She heard Myers
say to stay until he came back. Coutee decided it was best to leave. Coutee testified,
without objection, that she assumed that maybe Myers was going to get a gun. The court
then sustained an objection to her testifying why she thought he was going to get a gun. 
She also testified that she had dated Myers for "months" and that she had not known him
to have a gun, and that he had not previously threatened her. 

 Lufkin police officer Kent Havard testified that he responded to a "shots fired" call
at 419 Arena Street. He observed what appeared to be three shotgun blasts to the front of
the residence. After taking a report from the victim, Havard responded to 103 Everett,
a couple of blocks from 419 Arena. He and Officer Baker entered the house at 103 Everett
and located Myers inside, apparently hiding, lying on the floor in a small space between
the wall and the bed. Myers appeared to be intoxicated. Myers told Havard that he had
been in a fight at 419 Arena, and that he was hiding from the police because he didn't want
to get in trouble for fighting. Havard then went back to the original complainant's
residence. The complainant described defendant to be in a "green, Nissan type car." 
Officer Price located such a vehicle at Myers's residence and Havard testified to looking
at this vehicle. Havard had received a description of the suspect vehicle as having a
broken window, and the vehicle he observed at defendant's residence had a broken
window, was small and "(c)ould have been mistaken for a Nissan." No gun was ever
found at the scene or on Myers. He was not one hundred percent sure that Mr. Davis was
the person who described the car to him, as there were several people talking to him at the
same time. 

 Lufkin police officer Beau Price testified he was on duty January 27, 2001, when
at about 9:20 p.m., he overheard officer Havard dispatched on a shots fired call on Arena
Street. He heard on the police radio that Havard had already arrived, and that the suspect
had left the scene. Price then began a search of the immediate surrounding area, looking
for someone with a gun, or a vehicle moving in the area. On Everett Street, one block east
of Arena, he observed a car traveling at a very high rate of speed. Price thought the
vehicle was possibly involved in the shooting. He initiated a traffic stop on the vehicle,
a burgundy Mustang with dark, tinted windows, as it skidded into a driveway. The driver
of the vehicle, Steven Ross, jumped out of the car in an excited state. Ross acknowledged
to Price that a fight had just taken place on Arena Street. He denied that anyone was either
in his car or his house. Price was not convinced Ross was being truthful, and obtained
Ross's consent to search the house. Price remained with Ross, and two officers who had
just arrived, Havard and Baker, went inside to search the premises. Havard and Baker
eventually emerged from the house with Myers in custody. 

 Price then proceeded towards 110 Arena, directly around the corner from 103
Everett, as he had information that Myers lived on Arena. As he left the Everett location,
police dispatch broadcast the description of a vehicle involved in the shooting, which had
been seen by a neighbor: a small, green car, possibly a Nissan, with the back window
broken out of it. When Price heard that description, he realized he had just passed that
car, parked around the corner at the house on Arena Street. At the Arena Street location,
Price and Havard saw a green Kia with the back window broken out. The hood of the
vehicle was very hot, as if it had just been driven. 

 Lufkin police detective John Davis testified in the defense that on February 5, 2001,
he interviewed the complainant, Anthony Davis, who told him that someone named Preston
McKenzie had actually been the person that gave police the description of the green,
Nissan vehicle at the scene after the shooting. 

 Officer Havard testified in the defense that the neighbor across the street, whose
name he didn't remember, was the only individual who told the police of the green Nissan
with the broken window leaving the scene. 

 Preston McKenzie testified in the defense that he was playing dominoes inside of
his house at 310 Arena on January 27, 2001. He heard something that sounded like two
gun shots. He went to the door and saw a car speed up and go to the right. He described
that car as "blue or green," but he didn't remember seeing a "busted out" window. 
McKenzie did acknowledge that his memory of the events would have been much better
on January 27, 2001, than at the time of trial, and that he had given the police a
description of the vehicle minutes after the shooting. 

 The trier of fact may draw reasonable inferences from the facts presented. See Ware
v. State, 62 S.W.3d 344, 349 (Tex.App.-Fort Worth 2001 pet. ref'd); see also Horne v.
State, 46 S.W.3d 391, 393 (Tex.App.-Fort Worth 2001 pet. ref'd). We presume any
conflicting inferences were resolved by the trier of fact in favor of the verdict, and we
defer to that resolution. See Jensen v. State, 66 S.W.3d 528, 533 (Tex.App.--Houston
[14th Dist.] 2002, pet. filed). As the trier of fact, the trial judge reasonably could have
found that Myers was involved in a fight outside of Anthony Davis's house shortly before
the shooting; that he was in an agitated state after the fight was stopped by Davis; that he
said that he would return; that, having just been there, he knew that the house was
occupied; and that he lived in such close proximity to the Davis house that he could have
walked to his own house, obtained a gun, returned to the house as he said he would, and
fired at the Davis house. Myers was found trying to hide from the police. His vehicle was
similar to one observed leaving the scene of the crime, it was found at his house, and had
been recently driven. One officer testified that when he heard the vehicle description over
the dispatch, he immediately realized he had just seen the vehicle and he located the
vehicle at defendant's house. This evidence, viewed in the light most favorable to the
prosecution, supports the trial court's finding that Myers committed the offense charged. 
The legal sufficiency issue is overruled.

 The circumstantial evidence incriminates Myers, but none of the witnesses saw the
shooting and so no witness could positively identify the shooter. Likewise, no witness
could identify Myers as being behind the wheel of the vehicle seen leaving the scene. No
gun was found. The witness description of the shooter's car at trial did not include a
broken window, although he acknowledged his memory may not have been as accurate by
the time of trial as it was when he described the vehicle to the police. The factfinder's
determination was not based upon proof so weak as to be clearly wrong or manifestly
unjust, nor was the finding so against the great weight and preponderance of the evidence
as to be clearly wrong or manifestly unjust. The factual sufficiency issue is overruled.

 The judgment of the trial court is affirmed.

 AFFIRMED.

 _________________________________

 DAVID B. GAULTNEY

 Justice


Submitted on February 5, 2003

Opinion Delivered April 9, 2003 

Do Not Publish


Before McKeithen, C.J., Burgess, and Gaultney, JJ.

DISSENTING OPINION


 I respectfully dissent. The core issue in this case is whether Douglas Myers
knowingly discharged a firearm at or in the direction of a habitation, i.e., did Myers shoot
into the home of the Davis family? While I believe the evidence is legally insufficient, I
acknowledge that is a close question. However, that the evidence is factually insufficient
is far more evident. (1) 

 This case is epitomized by a portion of the record: 

 THE COURT: Please explain to me how you expect - how I'm supposed
to find this man guilty?


 PROSECUTOR: Based on the fact that he was hiding from the officers at
a residence that was not his after the shooting had occurred; that he left upset
about the situation, said: "I'm going to be coming back," with the - the fact
that they had - the car had been in the area, that the officers received some
information that was involved in the shooting that matched the description
of his vehicle.


Perhaps more telling is that the State concludes its brief with the question: "If Myers' were
not guilty, why would he be hiding between a wall and a bed from the police?" 
Apparently the State feels their first piece of circumstantial evidence, Myers' hiding from
the police, is their strongest.

 Neither party cites cases with this factual scenario nor did I find any. However, an
arguable analogy is the construct surrounding stolen property. Generally, if a defendant
is found in possession of recently stolen property and fails to make a reasonable
explanation showing his honest acquisition of the property at the time of his arrest, the
factfinder may draw an inference of guilt. See Hardesty v. State, 656 S.W.2d 73, 76 (Tex.
Crim. App. 1983). There must also be evidence in the record that the defendant's
explanation is false or unreasonable. See Sanders v. State, 675 S.W.2d 343, 345 (Tex.
App.--Fort Worth 1984), aff'd, 707 S.W.2d 78 (Tex. Crim. App. 1986). Thus, if the
defendant offers a reasonable explanation which sufficiently rebuts the circumstances of
possession of recently stolen property, the evidence is insufficient to sustain the conviction
unless it shows that the explanation was false. See McLemore v. State, 638 S.W.2d 211,
214 (Tex. App.--Houston [1st Dist.] 1982, no pet.). When the explanation is made at the
time of arrest, the necessity of showing that the explanation is false is even greater. See,
e.g., Callahan v. State, 502 S.W.2d 3, 6 (Tex. Crim. App. 1973). 

 Extrapolating the analogy to this case; Myers told Officer Havard he was hiding
because "he didn't want to get in trouble for fighting." Myers had been the one who threw
the first punch in the altercation with Chapman. This was a reasonable explanation made
at the time of an apprehension without any showing that the explanation was false;
consequently, the hiding cannot be considered as a circumstance indicating guilt. 

 The next piece of circumstantial evidence advanced by the State is Myers left upset
about the situation and said "just wait, I'll be back" or "stay here til I come back." True
enough; but Myers was upset with Chapman, not the Davis family. Clearly his remarks
were directed to Chapman because since they were at the Davis' home, there was no
reason to tell Anthony Davis to "just wait" or "stay here." Again, very thin evidence, if
any at all.

 The final piece of evidence is Myers' car in the vicinity of the shooting. Officer
Price testified he heard a description of a suspect car broadcast over the radio - a small
green car with a broken back window. Officer Price found a small green vehicle with a
broken back window parked in front of Myers' house and the hood of the vehicle was hot
as if it had just been driven. The only eye witness to a car in the vicinity testified he saw
a small blue or green car leave the vicinity, but did not see the car clearly and did not
remember seeing a broken window. A previous witness had testified Myers had been
dropped off at the Davis residence in a green car so the fact the car had been recently
driven is slim evidence it was involved in the shooting. 

 Viewing the evidence under the legally sufficient standard, in the light most
favorable to the prosecution, there is a reasonable doubt that Douglas Myers shot into the
home of the Davis family. Certainly under the factually sufficiency standard, a neutral
review of all the evidence, both for and against the finding, the evidence shows the proof
of guilt is so obviously weak that it shocks the conscience. Under this weak,
circumstantial evidence, I would reverse and acquit; or at the very least, reverse and
remand.




 DON BURGESS

 Justice

Dissent Delivered

April 9, 2003
1. A legal sufficiency review calls upon the reviewing court to view the relevant
evidence in the light most favorable to the verdict and determine whether any rational trier
of fact could have found the essential elements of the crime beyond a reasonable doubt. 
See Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979);
Mason v. State, 905 S.W.2d 570, 574 (Tex. Crim. App. 1995). In contrast, a factual
sufficiency review dictates that the evidence be viewed in a neutral light, favoring neither
party. See Clewis v. State, 922 S.W.2d 126, 134-36 (Tex. Crim. App. 1996). In
conducting a factual sufficiency analysis, the reviewing court "does not indulge inferences
or confine its view to evidence favoring one side of the case. Rather it looks at all the
evidence on both sides and then makes a predominantly intuitive judgment . . . ." Johnson
v. State, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000)(quoting William Powers and Jack
Ratcliff, Another Look at "No Evidence" and "Insufficient Evidence," 69 Tex. L. Rev.
515, 519 (1991)).