# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-05-00717-CR

**Dedrick Bunton, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 147TH JUDICIAL DISTRICT
### NO. D-1-DC-05-202462, HONORABLE WILFORD FLOWERS, JUDGE PRESIDING

### M E M O R A N D U M   O P I N I O N

Appellant Dedrick Bunton appeals his conviction for robbery. *See* Tex. Penal Code Ann. § 29.02(a)(1) (West 2003). A jury found appellant guilty and assessed his punishment at ten years and six months' imprisonment.

### POINTS OF ERROR

Appellant advances three points of error. First, appellant challenges the legal sufficiency of the evidence to sustain his robbery conviction. Second, he complains that he was denied his choice of having the trial court assess punishment when his counsel failed to object to the unauthorized assessment of punishment by the jury at the penalty stage of the bifurcated trial. Third, appellant urges that the judgment is subject to modification and reformation because it fails to correctly spell his name. We will affirm the judgment of conviction, as reformed.

# FACTUAL BACKGROUND

At about 2:00 a.m. on May 20, 2005, Nicole Riddle and her boyfriend, Timothy Daniel Cabellero, returned to her automobile, a BMW 325i parked at 7th and Lavaca Streets in downtown Austin. They had been in the warehouse or entertainment district of Austin for a late dinner. When Riddle started the car, she noticed that a display signal was indicating that a rear taillight of the car was "out." Cabellero had worked on the problem before and knew how to fix the taillight. Riddle "popped" the trunk and Cabellero went to the rear of the car.

Riddle, sitting in the driver's seat of the BMW, soon noticed a man sitting on a ledge on the sidewalk to her left. According to Riddle, the man was staring at her in a weird way. The man approached Riddle, walking slowly with his hand in his pocket. He was looking at her the entire time. The man opened the driver's door and in a threatening and forceful manner told Riddle, "Get out of your car." Riddle was concerned that the man might have a gun. Nevertheless, Riddle pushed the man away, told him to "get out of there" and pulled the door shut. The man ran off.

Riddle testified that about five minutes later, she saw the man again. This second time, she grabbed her cellular phone and completed a call to 911 before the man opened the passenger door and got in the car. The man got his arm around Riddle's neck and throat and used a head lock, causing what Riddle described as pain in her throat. Riddle struggled with the man for about a minute to prevent being pulled out of the car on the passenger side. Riddle had no doubt that the man wanted her BMW 325i.

Cabellero, from the rear of the car, got no response when he asked Riddle if the taillight was now working. He testified that he then walked from behind the car and noticed a man

2

trying to pull Riddle out of the car by her neck. He yelled at the man, "What are you doing?" The man got out of the car, jumped on the hood, leaving dents and foot marks, and ran off.

Cabellero stated that he gave chase for several blocks until he saw a police car and waved it down and pointed to the running man. Cabellero never lost sight of the man. When the police caught and arrested the man, Cabellero identified him as the man struggling with Riddle in the car. The man was identified at trial as appellant.

Stephen McCarthy, a Texas Alcoholic Beverage Commission agent, on duty at the time, heard the "in progress call" from the dispatcher. McCarthy was half a block away and responded. He saw Cabellero pointing out appellant to him. McCarthy approached appellant in his car, identified himself, and ordered appellant to stop. Appellant continued to run. McCarthy radioed other officers as to the location and gave a description of appellant.

Officer Theresa Ann Jester and Officer Harvey of the Austin Police Department heard McCarthy's message and joined him in the chase. Officer Jester heard Cabellero yelling, "There he goes, there he goes." During the chase, appellant fell and was apprehended.

Appellant testified on his own behalf. He admitted that he was in downtown Austin in the early morning hours of May 20, 2005, to see his girlfriend. He stated that he saw Riddle standing outside of her car, thought that she was attractive, and approached and asked for her telephone number. Appellant thought Riddle was alone. He stated that Riddle scornfully and in cursing language ordered him to get away from her. At this point, the boyfriend walked up, and then the police arrived on the scene. Appellant said that it was his natural reaction to run as he had "trouble" with the police in the past and he had "like $3,000 worth of traffic tickets."

3

Appellant stated that he approached the car once, not twice. He denied ever entering the car, placing Riddle in a choke hold, or trying to get her out of the car. Appellant stated that it was not his intent to steal the car. Appellant disclaimed jumping on the car's hood in his flight from the scene. He claimed that when apprehended, the police beat him and stole ten dollars of his money. Appellant was impeached with his admission of two prior felony convictions for theft and unauthorized use of a motor vehicle. The jury returned a verdict of guilty of the offense of robbery as charged in the indictment.

At the penalty stage of the trial, Officer Jester testified that when arrested, appellant was attempting to chew up and swallow rocks of crack cocaine, some of which spilled out of his mouth onto his clothes and some of which fell on the ground when he was lying on his stomach. The substance that was recovered was submitted for chemical analyses and shown to have a crack-cocaine base in the amount of 0.12 grams. Evidence of the two prior felony convictions was also introduced at the penalty stage. The jury, as noted, assessed punishment at ten years and six months' imprisonment.

## LEGAL SUFFICIENCY

In his first point of error, appellant claims that the "evidence is legally insufficient to prove that appellant was in the course of committing theft of property with intent to obtain or maintain control of property at the time he caused the complainant's bodily injury".[1]

---

[1] In his stated point of error, appellant seems to limit the scope of his challenge to the legal sufficiency of the evidence to sustain the robbery conviction.

The indictment in this second-degree felony robbery offense was drafted under the provisions of section 29.02(a)(1).[2]

The one-count indictment alleged in pertinent part that:

> Dedrick Bunton on or about the 20th day of May, 2005, . . . did then and there, while in the course of committing theft of property and with intent to obtain or maintain control of said property, intentionally, knowingly, or recklessly cause bodily injury to Nicole Riddle by choking Nicole Riddle . . .

The case was submitted to the jury in accordance with the allegations of the indictment and the described statute.

## STANDARD OF REVIEW

The Due Process Clause of the Fourteenth Amendment to the United States Constitution requires every state criminal conviction to be supported by evidence that a rational trier of fact could accept as sufficient to prove all the elements of the offense charged beyond a reasonable doubt. *In re Winship*, 397 U.S. 358, 364 (1970); *Fisher v. State*, 851 S.W.2d 298, 302 (Tex. Crim. App. 1993); *see also* Tex. Penal Code Ann. § 2.01 (West 2003); *Ward v. State*, 143 S.W.3d 271, 274 (Tex. App.—Waco 2004, pet. ref'd). Under the Fourteenth Amendment, the task of the appellate

---

[2] Section 29.02(a)(1) of the Texas Penal Code provides:

> (a) A person commits an offense if, in the course of committing theft as defined in Chapter 31 and with intent to obtain or maintain control of the property, he:
>
> (1) intentionally, knowingly, or recklessly causes bodily injury to another;

Texas Penal Code Ann. § 29.02(a)(1) (West 2003).

court is to consider all the evidence in the light most favorable to the verdict and determine if any rational trier of fact could have found beyond a reasonable doubt all the essential elements of the offense. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Sanders v. State*, 119 S.W.3d 818, 820 (Tex. Crim. App. 2003); *Cardenas v. State*, 30 S.W.3d 384, 389-90 (Tex. Crim. App. 2000). Reviewing courts are not fact-finders. Our role is that of a due process safeguard, ensuring only the rationality of the trier of fact's finding of the essential elements of the offense beyond a reasonable doubt. *See Moreno v. State*, 755 S.W.2d 866, 867 (Tex. Crim. App. 1988). "If, based on all the evidence, a reasonably minded jury must necessarily entertain a reasonable doubt of the defendant's guilt, due process requires that we reverse and order a judgment of acquittal." *Fisher*, 851 S.W.2d at 302 (quoting *Narvaiz v. State*, 840 S.W.2d 415, 423 (Tex. Crim. App. 1992)); *see also Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004). The legal sufficiency of the evidence under the *Jackson* standard is a question of law. *Matson v. State*, 819 S.W.2d 839, 846 (Tex. Crim. App. 1991); *Roberson v. State*, 16 S.W.3d 156, 165 (Tex. App.—Austin 2000, pet. ref'd).

In assaying all the evidence under the *Jackson* standard of review, a reviewing court must consider all evidence, rightly or wrongly admitted, that the trier of fact was permitted to consider. *See Conner v. State*, 67 S.W.3d 192, 197 (Tex. Crim. App. 2001); *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999); *Garcia v. State*, 919 S.W.2d 370, 378 (Tex. Crim. App. 1994); *Johnson v. State*, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993). The standard of review is the same for both direct and circumstantial evidence. *Guevara*, 152 S.W.3d at 49. The sufficiency of the evidence is determined from the cumulative effect of all the evidence; each fact in isolation need not establish the guilt of the accused. *Alexander v. State*, 740 S.W.2d 749, 758 (Tex. Crim.

6

App. 1987); *Roberson*, 16 S.W.3d at 164. In analyzing a challenge to the legal sufficiency of the evidence, a reviewing court does not realign, disregard, or weigh the evidence. *King v. State*, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000); *Rodriguez v. State*, 939 S.W.2d 211, 218 (Tex. App.—Austin 1997, no pet.). The jury as the trier of fact is the sole judge of the credibility of the witnesses and the weight to be given the testimony and may accept or reject all or any of a witness's testimony. *See Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986); *Williams v. State*, 692 S.W.2d 671, 676 (Tex. Crim. App. 1984). The verdict may not be overturned unless it is irrational or unsupported by proof beyond a reasonable doubt. *Matson*, 819 S.W.2d at 846; *Ware v. State*, 62 S.W.3d 344, 349 (Tex. App.—Fort Worth 2001, pet. ref'd).

Appellant argues that under section 29.02(a)(1), a person commits a robbery if in the course of committing theft and with the intent to obtain and maintain control of property, he assaults and causes bodily injury to another. He urges that the law requires a nexus between the assaultive conduct and the taking or attempted taking of property, citing *McGee v. State*, 774 S.W.2d 229, 234 (Tex. Crim. App. 1989), and *Ibanez v. State*, 749 S.W.2d 804, 807 (Tex. Crim. App. 1986). Appellant points out that if the assaultive conduct is unrelated to any taking or attempted taking, the evidence is insufficient to support a robbery conviction, citing *Alvarado v. State*, 912 S.W.2d 199, 207 (Tex. Crim. App. 1995), and *Moody v. State*, 827 S.W.2d 875, 892 (Tex. Crim. App. 1992).

Appellant acknowledges that the State's evidence shows that he caused bodily injury to Riddle by placing his arm around her neck. He maintains, however, that the evidence is woefully lacking on the issue of theft or attempted theft at the time of the assault. Appellant claims that there is no evidence that he demanded that Riddle give him any property at the time of the assault, and no

7

evidence to show that he took or attempted to take any property from the scene of the assault. He argues that neither his acts nor his conduct would support an inference of an intent to obtain or maintain control of any property at the time of the acknowledged assault. Appellant urges that he is entitled to acquittal as no lesser-included offenses were included in the trial court's charge.

In viewing all the evidence before the jury, we turn first to appellant's claim of a lack of a nexus between the assaultive conduct and the attempted theft, if any. In the darkness of the early morning hours of May 20, 2005, appellant approached Riddle's parked automobile, a BMW 325i, a popular motor vehicle. Appellant believed that Riddle was alone at the time he opened the door and verbally demanded that Riddle get out of her own car. Riddle believed that appellant was trying to steal her car. She rebuffed appellant by pushing him away and shutting the car door. Appellant left the scene but returned within five minutes. This time appellant got in the car on the passenger's side and tried to extract Riddle from the car by using a headlock, causing bodily injury to Riddle. This time no verbal demand was made. Appellant's efforts were interrupted by Cabellero's appearance.

"In the course of committing a theft" as used in the statute, indictment, and the court's jury charge means "conduct that occurs in an attempt to commit, during the commission, or in immediate flight after the attempt or commission of theft." Tex. Penal Code Ann. § 29.01(1) (West 2003); *Autrey v. State*, 626 S.W.2d 758, 762 (Tex Crim. App. 1982). The actual commission of theft is not a prerequisite to the commission of robbery. *King v. State*, 157 S.W.3d 873, 874 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd); *Garza v. State*, 937 S.W.2d 569, 570 (Tex. App.—San Antonio 1996, pet. ref'd); *Yarbrough v. State*, 656 S.W.2d 200, 201

8

(Tex. App.—Austin 1985, no pet.). Thus, proof of a completed theft is not required to establish robbery. *See Bustamante v. State*, 106 S.W.3d 738, 740 (Tex. Crim. App. 2003); *Wolfe v. State*, 917 S.W.2d 270, 275 (Tex. Crim. App. 1996); *Earl v. State*, 514 S.W.2d 273, 274 (Tex. Crim. App. 1974). The offense of robbery includes those instances in which bodily injury is inflicted in an attempt to commit theft. *See Taylor v. State*, 859 S.W.2d 466, 468 (Tex. App.—Dallas 1993, no pet.). Therefore, the gravamen of robbery is its assaultive conduct and not the underlying theft or attempted theft. *See Green v. State*, 840 S.W.2d 394, 401 (Tex. Crim. App. 1992); *Matlock v. State*, 20 S.W.3d 57, 63 (Tex. App.—Texarkana 2002, pet. ref'd); *Purser v. State*, 902 S.W.2d 641, 647 (Tex. App.—El Paso 1995, pet. ref'd).

Intent is a fact issue for the jury. *See Robles v. State*, 664 S.W.2d 91, 94 (Tex. Crim. App. 1984); *Rodriguez v. State*, 793 S.W.2d 744, 748 (Tex. App.—San Antonio 1996, no pet.). Intent may be inferred from the acts, words, and conduct of the accused. *See Guevara*, 152 S.W.2d at 50; *Patrick v. State*, 906 S.W.2d 481, 487 (Tex. Crim. App. 1995); *Dues v. State*, 634 S.W.2d 302, 305 (Tex. Crim. App. 1982). Mental culpability generally must be inferred from the circumstances under which the prohibited act occurred. *See Dillon v. State*, 574 S.W.2d 92, 94 (Tex. Crim. App. 1978); *Skillern v. State*, 890 S.W.2d 849, 880 (Tex. App.—Austin 1994, pet. ref'd).

"Intent to obtain and maintain property" (intent to steal) must be shown to prove an attempted theft but can be proven from circumstantial evidence. *Wolfe*, 917 S.W.2d at 275. The jury is free to infer the necessary intent to steal from the actions and conduct of the accused. *See Conner v. State*, 67 S.W.3d 192, 197 (Tex. Crim. App. 2001); *King*, 157 S.W.3d at 874.

A verbal demand for the property is not a talisman of an intent to steal. *See Johnson v. State*, 541 S.W.2d 185, 187 (Tex. Crim. App. 1976); *King*, 157 S.W.2d at 874; *Garza*, 937 S.W.2d at 570-71. The attempt to commit or the commission of theft in a robbery case may be inferred from all the circumstances. *Johnson*, 561 S.W.2d at 187; *Banks v. State*, 471 S.W.2d 811, 812 (Tex. Crim. App. 1971). The intent to cause bodily injury can likewise be inferred from circumstantial evidence, and an accused may form that intent at any time during the course of committing theft or attempted theft in the context of a robbery. *See Matlock*, 2 S.W.3d at 63.

In a sufficiency review, the jury's inference of intent is afforded more deference than the evidence supporting proof of conduct. *See Margraves v. State*, 34 S.W.3d 912, 919 (Tex. Crim. App. 2002). Circumstantial evidence of a defendant's intent is not required to meet the same vigorous criteria for sufficiency as circumstantial proof of other offensive elements. *Id.*; *Brown v. State*, 911 S.W.2d 744, 747 (Tex. Crim. App. 1985).

It is true that mere presence at the scene or even flight from the scene, either standing alone or combined, is insufficient to sustain a conviction. *See King v. State*, 638 S.W.2d 903, 904 (Tex. Crim. App. 1982). They are, however, circumstances from which the trier of fact may draw an inference of guilt. *See Turner v. McKaskle*, 721 F.2d 999, 1002 (5th Cir. 1983); *Thompson v. State*, 697 S.W.2d 413, 417 (Tex. Crim. App. 1989); *Scott v. State*, 946 S.W.2d 166, 168 (Tex. App.—Austin 1997, pet. ref'd). Here, the evidence reflects appellant's presence and his flight from the scene along with his other actions. Conduct before, during, and after the commission of the offense may be considered in determining an accused's culpability. *See Barron v. State*, 566 S.W.2d 929, 931 (Tex. Crim. App. 1978).

Appellant presented his version of the events denying all culpability. The evidence is not rendered insufficient because a defendant presents a different version of the facts than the State. *See State v. Turro*, 867 S.W.2d 43, 47-48 (Tex. Crim. App. 1993). Reconciliation of evidentiary conflicts is solely the function of the trier of fact. *See Miranda v. State*, 813 S.W.2d 724, 733-34 (Tex. App.—San Antonio 1991, pet. ref'd).

We reject appellant's argument that the assaultive conduct was unrelated to the attempted theft. The general rule in robbery cases is that the connection between the assault and the theft or attempted theft may be inferred when both offenses occur in close temporal proximity. *See Cooper v. State*, 67 S.W.3d 221, 224 (Tex. Crim. App. 2002). This inference will not be negated by evidence of an alternate motive that a rational jury could rationally disregard. *Id*. We also disagree with appellant's assertion that the State failed to prove that appellant's actions occurred in the course of committing theft or attempted theft with the requisite intent to steal. A rational jury could have reasonably drawn the necessary inferences from the evidence, both direct and circumstantial.

Viewing all the evidence in the light most favorable to the jury's verdict, we conclude that a rational jury could have found beyond a reasonable doubt all the essential elements of the robbery offense charged. The first point of error is overruled.

## THE JURY ASSESSES PUNISHMENT

In point of error two, appellant states that he "was denied his choice of the trial court assessing punishment when trial counsel failed to object to the unauthorized assessment of

punishment by the jury." This matter is raised for the first time on appeal. Appellant claims that he is entitled to a new hearing on punishment before the trial court.

Appellant points out that under the provisions of article 37.07, section 2(b) of the Texas Code of Criminal Procedure, it is the responsibility of the trial judge, upon a finding of guilty in noncapital cases to assess punishment except under certain circumstances. *See* Tex. Code Crim. Proc. Ann. art. 37.07, § 2(b) (West 2005). Appellant contends that he did not elect to have the jury assess punishment upon a finding of guilty, or file a sworn motion asking the jury to grant community supervision and that the record is silent as to any change of election as to the assessor of punishment with the consent of the prosecutor.

Appellant notes that in the voir dire examination of the jury panel, his trial counsel made no mention of the range of punishment involved or any other matter pertaining to a jury's actions at a penalty stage of a trial. Appellant calls attention to the fact that on the day of trial, he filed a motion pursuant to section 12.45. *See* Tex. Penal Code Ann. § 12.45 (West 2003). The motion requested that the trial court, in the event of a finding of guilty, take into consideration an unadjudicated offense in assessing punishment in the instant robbery case. The State joined the motion and it was approved by the trial court.

Despite the above, the record reflects that the penalty stage of the trial was conducted before the jury. The record is silent with regard to how this occurred. The jury assessed punishment as reflected by the court's judgment.

Appellant and his trial counsel participated in the penalty stage of the trial without objection, thus waiving any statutory rights regarding the assessment of punishment. No reversible

12

error is presented. *See* Tex. R. App. P. 33.1(a); *Fontenot v. State*, 500 S.W.2d 843, 844 (Tex. Crim. App. 1973); *Dickson v. State*, 492 S.W.2d 267, 270 (Tex. Crim. App. 1973); *Perez v. State*, 625 S.W.2d 785, 785 (Tex. App.—Amarillo 1981, no pet.); *see also State v. Baize*, 947 S.W.2d 307, 311 (Tex. App.—Amarillo 1997), *aff'd*, 981 S.W.2d 204 (Tex. Crim. App. 1998).

Appellant recognizes the holdings in *Fontenot* and *Dickson*, but claims that his trial counsel's failure to object constitutes ineffective assistance of counsel under the Sixth and Fourteenth Amendments to the United States Constitution. He cites only *Ex parte Walker*, 794 S.W.2d 36 (Tex. Crim. App. 1990). *Walker*, a post-conviction habeas corpus proceeding, involved the claim that trial counsel was ineffective solely because he failed to timely file a motion electing to have the jury assess punishment. The majority in *Walker*, finding that the error was one relating to punishment, granted relief under the standard set forth in *Ex parte Duffy*, 607 S.W.2d 507 (Tex. Crim. App. 1980), rather than *Strickland v. Washington*, 466 U.S. 668, 687-94 (1984). *Duffy* has now been overruled by *Hernandez v. State*, 988 S.W.2d 770, 772 (Tex. Crim. App. 1999), restoring the proper *Strickland* standard. *Walker* is not controlling. It is neither factually nor legally applicable to the instant case.

A motion for new trial was filed, but it did not allege ineffective assistance of counsel. The motion was overruled by operation of law. Tex. R. App. P. 21.8(c). The appellate record, without additional facts adduced at a hearing on a motion for new trial, *see* Tex. R. App. P. 21.2, is generally inadequate for appellant to sustain his burden of establishing both prongs of the *Strickland* standard. *See Jackson v. State*, 973 S.W.2d 954, 956 (Tex. Crim. App. 1998). Any allegation of ineffectiveness must be firmly founded in the record, which must affirmatively demonstrate the alleged ineffectiveness. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). The

13

reviewing court cannot speculate beyond the record provided. *See Mallett v. State*, 65 S.W.2d 59, 63 (Tex. Crim. App. 2001); *Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). When the appellate record on direct appeal is silent, as is the instant one, concerning the motivations underlying counsel's strategy and tactical decisions, an appellant will rarely overcome the strong presumption that counsel's conduct was reasonable. *Mallett*, 65 S.W.3d at 63; *Thompson*, 9 S.W.3d at 813. The record here does not reflect what happened. Trial counsel has not been given an opportunity to clarify his failure to object. He ordinarily should be given a chance to explain his actions before being classified professionally as ineffective. *See Bone v. State*, 77 S.W.3d 828, 838 (Tex. Crim. App. 2002). In light of the record before this Court, we overrule the second point of error.

## MODIFICATION OF JUDGMENT

In his third point of error, appellant requests a modification and reformation of the formal judgment to reflect his correct first or given name. He contends that his correct name is "Dedrick Bunton" as alleged in the indictment, but that the formal judgment refers to him as "Derick Bunton." A court of appeals has the authority to modify a trial court's judgment. *See* Tex. R. App. P. 43.2(b). We have the necessary data and evidence before this court to correct an obvious clerical error and reform the judgment to reflect that appellant's correct name is "Dedrick Bunton." *See Banks v. State*, 708 S.W.2d 460, 462 (Tex. Crim. App. 1986); *Ex parte Splawn*, 160 S.W.3d 103, 107 (Tex. App.—Texarkana 2005, pet. ref'd); *Abron v. State*, 997 S.W.2d 281 (Tex. App.—Dallas 1998, pet. ref'd); *Asberry v. State*, 813 S.W.2d 526, 529-31 (Tex. App.—Dallas 1991, pet. ref'd).

It is so ordered. The third point of error is sustained with regard to the modification and reformation of the judgment.[3]

The judgment of conviction, as modified and reformed, is affirmed.

_____

John F. Onion, Jr., Justice

Before Chief Justice Law, Justices Pemberton and Onion*

Modified and, as Modified, Affirmed

Filed:   June 27, 2007

Do Not Publish

* Before John F. Onion, Jr., Presiding Judge (retired), Texas Court of Criminal Appeals, sitting by assignment. *See* Tex. Gov't Code Ann. § 74.003(b) (West 1998).

_____

[3] The State calls attention to the fact that the clerical error has been corrected by a judgment nunc pro tunc entered in the trial court after the appellate record was filed in this Court. A supplemental record has now been filed in this Court. Rule 23.1 provides:

> Unless the trial court has granted a new trial or arrested the judgment, *or unless the defendant has appealed*, a failure to render judgment and pronounce sentence may be corrected at any time by the court's doing so.

Tex. R. App. P. 23.1 (emphasis added). We conclude that order is legally appropriate and necessary. *See* Tex. R. App. P. 25.2(g).